TROUT UNLIMITED, Colorado Trout
Unlimited and Robert W. Albert,
Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, Dan Glickman, James
R. Lyons, United States Forest Service,
Jack Ward Thomas, Elizabeth Estill and
M.M. Underwood, Defendants.

Civil Action No. 95–1075 (RMU).

United States District Court,
District of Columbia.

Oct. 23, 1996.

**14**

Michelle L. Bodley, Julia Ann Dahlberg, Christopher H. Buckley, Gibson, Dunn & Crutcher, Washington, D.C., for Plaintiffs.

Lynn A. Johnson, David W. Gehlert, U.S. Department of Justice, Environment & Natural Resources, Denver, CO, for Defendants.

*MEMORANDUM OPINION AND ORDER*

**Granting Defendants' Motion to Transfer**

URBINA, District Judge.

This matter comes before the court upon the defendants' motion to transfer this action to the United States District Court for the District of Colorado. After considering the parties' submissions and the relevant law, the court concludes that the defendants' motion to transfer shall be granted because the present action could have been brought in Colorado and the interests of the parties and of potential witnesses, as well as the interests of justice dictate that the action be heard in that forum.

## I. Background

Plaintiffs, Trout Unlimited, Colorado Trout Unlimited, and Ronald W. Albert, have brought this civil action seeking to enjoin the operation of the Long Draw Reservoir, a water storage facility located just east of the continental divide in northern Colorado. Trout Unlimited, located in Arlington, Virginia, is a not-for-profit corporation dedicated to conserving, protecting, and restoring North America's cold water fisheries and their watersheds. Colorado Trout Unlimited, located in Englewood, Colorado, is a not-for-profit organization engaged in the conservation, protection, and restoration of Colorado's cold water resources and represents the 5,000 member state council of Trout Unlimited. Ronald W. Albert, a resident of Loveland, Colorado, is a member of Trout Unlimited and Colorado Trout Unlimited and actively derives enjoyment from the affected lands and waters in this action.

Defendants, United States Department of Agriculture, United States Forest Service, Dan Glickman, Jack Ward Thomas, and James Lyons, are located in Washington, D.C. The Department of Agriculture is responsible for the oversight, management, and care of the National Forest System. The United States Forest Service is the agency within the Department of Agriculture responsible for the oversight, management, and care of the National Forest System. Dan Glickman is the Secretary of the Department of Agriculture. Jack Ward Thomas is the Chief of the United States Forest Service. James R. Lyons is the Under Secretary for Natural Resources and Conservation at the Department of Agriculture. Defendants Elizabeth Estill and M.M. Underwood are also located in Colorado. Ms. Estill is the Regional Forester of the Rocky Mountain Region. Mr. Underwood is the Forest Supervisor for the Arapaho and Roosevelt Na-

tional Forests. These defendants are all sued in their official capacity.

The Long Draw Reservoir was constructed in 1927 on a site originally located within Rocky Mountain National Park. Following legislative action, which made modifications to the boundaries of the park and surrounding forest, the reservoir became located on what is now Roosevelt National Forest. It is owned and operated by the Water Supply and Storage Company.[1] The Reservoir is one of numerous high mountain water storage facilities on various tributaries of the headwaters of the Cache la Poudre River. The Reservoir stores water captured by the Grand River Ditch, which transports water over the Continental Divide at La Poudre Pass, and water from tributaries to La Poudre Pass Creek. The Reservoir is the sole storage facility for water exported by the Grand River Ditch from the Never Summer Range on the western slope of the continental divide. This imported water increases instream flows on La Poudre Pass Creek, as well as on the Cache la Poudre River, and serves as an additional water supply for the northern front range.

In 1994, the Forest Service granted an easement for the continued operation of the reservoir. The easement also provides for augmentation of the flow of the Cache la Poudre River with water from other reservoirs. The easement includes a condition that the reservoir be operated in conjunction with a "Joint Operations Plan" involving other water diversion structures. The 1994 easement is the subject of this action. Plaintiffs have challenged the Forest Service's decision to issue the easement for the operation of Long Draw Dam and Reservoir on public land in the Roosevelt National Forest in Colorado without also requiring minimum continuous releases of water from the dam headgate, otherwise known as bypass flows. Plaintiffs allege that without bypass flows,

La Poudre Pass Creek is incapable of supporting a natural fishery. In addition, plaintiffs allege that habitat downstream from this creek will be degraded by the diminished flow of water.

Plaintiffs bring this action pursuant to the Administrative Procedure Act, Section 5 U.S.C. Section 706(2). Plaintiffs allege that the Forest Service's decision to grant the Long Draw Easement violates Section 505 of the Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701 *et seq.* (FLPMA). Furthermore, plaintiffs claim that the easement fails to comply with provisions of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* (NEPA), the Forest and Rangeland Renewable Resources Planning Act, 16 U.S.C. § 1600 *et seq.* (FRRRPA), the Wild and Scenic Rivers Act, 16 U.S.C. § 1271 *et seq.,* and the Wilderness Act, 16 U.S.C. § 1131 *et seq.* Plaintiffs also assert that the decision to grant the easement is inconsistent with various regulations promulgated by the Forest Service and with a Forest Plan issued by the Forest Service in 1984. Plaintiffs request that this court remand the easement to the Forest Service with instructions to impose bypass flows as a condition of Water Supply's continued operation of the Reservoir and further to impose an injunction restraining the Forest Service from allowing the operation of Long Draw Dam and Reservoir under the terms of the current easement.

Presently before the court is defendants' motion to transfer this action to the United States District Court for the District of Colorado.[2]

## II. Analysis

■■■ The defendants seek to transfer this case to the state of Colorado pursuant to 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district

1. Water Supply has moved to intervene in this action and has also joined in the defendants' request to transfer this action to Colorado.

2. Also before the court are motions to intervene filed by the Colorado Water Conservation Board and Water Supply and Storage Company. The Board was created by the Colorado legislature to aid in "the protection and development of the

waters of the state for the benefit of present and future inhabitants of the state." Section 37-60-102, C.R.S. (1990). These two parties' motions shall be denied without prejudice so that they may refile them in district court in Colorado. Both parties have joined in the defendants' request to transfer this action to Colorado.

court may transfer any civil action to any other district or division where it might have been brought.

The moving party bears the burden of establishing that the transfer of this action is proper. *Air Line Pilots Ass'n v. Eastern Air Lines,* 672 F.Supp. 525, 526 (D.D.C. 1987); *Int'l Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.,* 621 F.Supp. 906, 907 (D.D.C. 1985). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988) (*quoting Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)).

■ The threshold question under Section 1404(a) is whether the action might have been brought in Colorado. *Van Dusen,* 376 U.S. at 613, 84 S.Ct. at 807–08. In a suit based on federal question, as is this one, venue is proper in the "judicial district in which ... a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(2).[3] In the case at bar, venue is proper in Colorado under this provision since the plaintiffs' claims arise out of a nucleus of facts that involve property that is entirely located within the state of Colorado.

Specifically, the subject matter of this case concerns Colorado's Arapaho and Roosevelt National Forests, the Long Draw Dam and Reservoir, La Poudre Pass Creek, along with its aquatic habitat, ecosystems and connecting bodies of water, as well as individuals that derive enjoyment from these affected areas of northern Colorado. Consequently,

plaintiffs could have brought the instant action in Colorado.

■ The court's inquiry proceeds to the issue of whether the case should be transferred based on the convenience of the parties, the convenience of the witnesses, and the interests of justice. In ruling on Section 1404(a) motions, courts have not, however, limited their consideration to these three enumerated factors. Courts have considered various other factors, including the private interests of the parties and the public interests of the court, which are protected by the language of Section 1404(a). *Jumara v. State Farm Insurance Co.,* 55 F.3d 873, 879 (3rd Cir.1995); *see also Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125, 1129 (N.D.Ill.1989). The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;[4] (2) the defendants' choice of forum;[5] (3) whether the claim arose elsewhere;[6] (4) the convenience of the parties;[7] (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;[8] and (6) the ease of access to sources of proof.[9]

■ The public interest considerations include: (1) the transferee's familiarity with the governing laws;[10] (2) the relative congestion of the calendars of the potential transferee and transferor courts;[11] and (3) the local interest in deciding local controversies at home.[12] These factors, which the court will address in turn, unequivocally support a transfer to the United States District Court for the District of Colorado.

3. *See Town of Ledyard v. United States,* Civ. No. 95–0880 (D.D.C. May 31, 1995); *see also Martin–Trigona v. Meister,* 668 F.Supp. 1, 4 (D.D.C. 1987).

4. *Int'l Brotherhood,* 621 F.Supp. at 907.

5. 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters,* § 3848 at 385 (2d ed. 1986).

6. *Jumara,* 55 F.3d at 878.

7. *Air Line Pilots Ass'n,* 672 F.Supp. at 526.

8. 15 Wright, Miller, & Cooper § 3851, at 420–422.

9. *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 323 (D.D.C.1991).

10. *Id.* at 324.

11. *SEC v. Savoy Industries,* 587 F.2d 1149, 1156 (D.C.Cir.1978).

12. *Jumara,* 55 F.3d at 879.

## A. Private Considerations

 The court must afford some deference to the plaintiff's choice of forum. *Air Line Pilots Ass'n,* 672 F.Supp. at 526. However, this deference is mitigated where the plaintiff's choice of forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 165 (D.D.C.1995) (*quoting Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142, 143–44 (D.D.C.1979)). Moreover, the showing defendants must make is lessened when the "plaintiff[s'] choice [of forum] has no factual nexus to the case,"[13] and, where, as in this case, transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state. *Citizen Advocates for Responsible Expansion, Inc. (I-Care) v. Dole,* 561 F.Supp. 1238, 1240 (D.D.C.1983).

Presently, the plaintiff's choice of forum, the District of Columbia, has no meaningful ties to or interest in this suit. In such circumstances, this court must be especially cautious in allowing this case to remain in the District of Columbia. *See Cameron v. Thornburgh,* 983 F.2d 253 (D.C.Cir.1993). The only relationships this suit bears to the District of Columbia is that one of the plaintiffs, Trout Unlimited, is located in Arlington, Virginia.[14] However, cases decided under Section 1404(a), "have laid much less emphasis on this [residence] factor." *King,* 709 F.Supp. at 262 (*citing* 15 Wright, *et al.* § 3489). Colorado, on the other hand, possesses a significant and predominant interest in this suit because of the impact that the

resolution of this action will have upon the affected lands, waters, wildlife and people of that state. Moreover, Colorado has an overwhelming connection to the subject matter of this action. Long Draw Dam and Reservoir is located in Larimer County, Colorado. The waters of La Poudre Pass Creek and the Cache la Poudre River are located in Colorado. Other, very interested parties, such as Water Supply, the owner of Long Draw Dam and Reservoir and its shareholder-users, are located in Colorado. The Colorado Water Conservation Board is located in Colorado. The agricultural and municipal properties which depend upon the water stored in the Long Draw Reservoir are located in Colorado. Thus the affected public, the water users and residents of Cache la Poudre basin, are located in Colorado. Importantly, the people who are concerned about the easement's potentially negative impact upon wildlife are located in Colorado.

In addition, the office of the Regional Forester of The Rocky Mountain Region is located in Colorado. M.M. Underwood, the Forest Supervisor for the Arapaho and Roosevelt National Forests is located in Colorado. The Aparaho and Roosevelt National Forests are located entirely within Colorado. The Environmental Impact Statement prepared by the U.S. Forest Service was prepared at the direction and under the supervision of Mr. Underwood in Colorado. The record of decision involving Long Draw Dam and Reservoir was issued by Mr. Underwood in Colorado and plaintiffs' administrative appeal was to the Regional Forester in Colorado. Review of the Record of Decision was done by the Regional Forester's office in

---

13. *Harris v. Republic Airlines, Inc.,* 699 F.Supp. 961, 963 (D.D.C.1988) (internal citations omitted); *see also Comptroller of Currency v. Calhoun First Nat. Bank,* 626 F.Supp. 137, 140 n. 9 (D.D.C.1985) (noting that "plaintiff's choice of forum is no longer entitled to great deal of weight [], particularly when there is an insubstantial factual nexus with the plaintiff's choice.") (internal citations omitted).

14. *See King v. Navistar Int'l Trans. Corp.,* 709 F.Supp. 261, 262–3 (D.D.C.1989) (granting transfer where the plaintiff was a resident of the District of Columbia and all of the events were "inextricably linked to the state of Virginia."); *SEC v. Ernst & Young,* 775 F.Supp. 411, 414 (D.D.C.1991) (granting transfer where "no un-

derlying operative facts arose in the District of Columbia"); *Nichols v. U.S. Bureau of Prisons,* 895 F.Supp. 6, 8 (D.D.C.1995) (granting transfer where the District of Columbia had virtually no connection to the action except for a telephone call); *Harris v. Republic Airlines, Inc.,* 699 F.Supp. 961, 963 (D.D.C.1988) (granting transfer where the plaintiff's choice of forum had an "extremely tenuous" relationship to the District of Columbia and the circumstances giving rise to the dispute were centered in Minnesota); *Schmid Laboratories, Inc. v. Hartford Accident and Indemnity Co.,* 654 F.Supp. 734 (D.D.C.1986) (granting transfer where no part of the insurance contracts at issue were negotiated, entered into or performed in the District of Columbia).

Denver and all records are located there. The easement authorizing the operation of the enlarged Long Draw Dam and Reservoir was issued in Colorado by the Regional Forester of the Rocky Mountain Region in Denver. The Joint Operations Plan involves the release of water from reservoirs located in Larimer County, Colorado into the Cache la Poudre River at points in Larimer County, Colorado. Lastly, plaintiffs, with the exception of Trout Unlimited, are located in Colorado.

The relationship of the agency action in this matter to Washington, D.C. is attenuated. Plaintiffs allege that the Long Draw Easement was the result of a directive issued by former Secretary of Agriculture, Edward R. Madigan. Specifically, plaintiffs proffer that eleven members of Congress sent a letter to former Secretary Madigan in Washington, D.C., objecting to the imposition of bypass flow requirements on existing facilities. Plaintiffs claim former Secretary Madigan issued a directive (the Madigan Directive) from Washington, D.C. to the Regional Foresters of the Forest Service throughout the United States, directing the Foresters to exempt existing water diversion facilities in all National Forests from minimum bypass flow requirements.

However, the facts before the court do not support plaintiffs' position. The decision-making process at both the forest and regional level occurred in Colorado, not in Washington, D.C. and not as a result of a directive from a local agency. Forest Supervisor for the Arapaho and Roosevelt National Forests and Pawnee National Grassland, M.M. Underwood, Jr., issued a Record of Decision concerning the land-use authorization for Long Draw Dam and Reservoir.[15] This record was issued on July 29, 1994 in the Redfeather Ranger District, Larimer County, Colorado. Supervisor Underwood states in this record that he considered many factors in making his decision such as the environmental impact of the easement and the divergent opinions of many interested parties.[16] Nowhere in the record does Supervisor Underwood mention the Madigan Directive. Rather, the record reflects that Supervisor Underwood issued his administrative decision after a careful consideration of various factors. Plaintiffs' allegation that this administrative decision was the direct result of the Madigan Directive thus has little support in the record compiled thus far.[17]

The convenience of the parties similarly supports transfer of this case to Colorado. Two of the three plaintiffs, Colorado Trout Unlimited and Ronald W. Albert, are located in Colorado. Plaintiffs have counsel located in Colorado. The defendants most involved in this matter are Regional Forester Estill and Forest Supervisor Underwood, both of whom are located in Colorado.

The convenience of witnesses in this case has less relevance because this case involves judicial review of an administrative decision and accordingly, all existing parties have stipulated that neither discovery, witnesses, nor a trial will be required.[18] Rather, judicial review will be limited to the administrative record. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). Presently, the administrative record is located in Colorado where it was originally compiled. Litigating this case in Washington, D.C. will require this voluminous record to be transferred here.[19] In sum, after considering the private interests of the parties, the court concludes that they support a transfer to Colorado.

15. Defendants' Exhibit–A, attached to Reply Mem. in Support of Mot. to Transfer.

16. *Id.* at 2.

17. In addition, the Joint Operation Plan, ultimately adopted by the Forest Service, was developed by and negotiated between water users, Forest Service personnel, and State officials, all located in Colorado.

18. If witnesses' testimony becomes necessary, it will be more convenient for the witnesses to provide it in Colorado since a clear majority of the potential witnesses reside there.

19. *See Hardaway Constructors Inc. v. Conesco Industries, Ltd.,* 583 F.Supp. 617, 619 (D.N.J. 1983) (the court found that the forum most appropriate to entertain the case was the one where the records were located).

## B. Public Considerations

The interests of justice also favor the transfer of this case to Colorado. These interests are best served by having a case decided by the federal court in the state whose laws govern the interests at stake. *See Schmid Laboratories,* 654 F.Supp. at 737; *Islamic Republic of Iran,* 477 F.Supp. at 144; *see also King,* 709 F.Supp. at 262. While this case deals directly with federal statutes and regulations, it may also, in part, involve the interpretation of Colorado law. Under the District of Columbia's choice of law rules, the law governing the plaintiff's claims is the law of the state with the most significant relationship to the matters at issue. *Church of Scientology Int'l v. Eli Lilly & Co.,* 848 F.Supp. 1018, 1026 (D.D.C.1994). The entitlement of Water Supply to the water and the terms and conditions under which its shareholders use the water are creations of Colorado law. Colorado law concerning issues of the local Forest Service and/or water rights may also prove necessary to the resolution of this case. The district court in Colorado is more familiar than this court with the application of Colorado law. *See Armco Steel Co.,* 790 F.Supp. at 311, 324; *Van Dusen,* 376 U.S. at 645, 84 S.Ct. at 823–24. Transfer of this action to the district court in Colorado, which is already thoroughly familiar and experienced with law that may be relevant to this action, will therefore promote judicial economy. *See Zurich Ins. Co. v. Raymark Industries, Inc.,* 672 F.Supp. 1102, 1104 (N.D.Ill.1987).[20]

The relative docket congestion and potential speed of resolution with respect to both the transferor and transferee courts are also appropriate factors to consider. *See SEC v. Savoy Industries, Inc.,* 587 F.2d 1149, 1156 (D.C.Cir.1978). It is not evident that a transfer to the northern district of Colorado will lead to unnecessary delay. Additionally, this court has neither dealt with other issues in the suit nor has it familiarized itself with the underlying merits of the case.[21] Since this case is in its earliest stages, there would be no delay associated with the Colorado district court's having to familiarize itself with this case. *See Zurich Insurance Co.,* 672 F.Supp. at 1104.

Finally, this court will defer to the more compelling interest of the State of Colorado in having this localized controversy decided at home. *See Armco Steel Co.,* 790 F.Supp. at 324; *see also Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (stating that, "[t]here is a local interest in having localized controversies decided at home."); *see also Chrysler Capital Corp. v. Woehling,* 663 F.Supp. 478, 483 (D.Del.1987) (stating that "[t]he most significant criterion for deciding a motion to transfer is the interest of justice.") (internal citation omitted); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir.1986) (stating that the interests of justice may be dispositive in a given case). Controversies should be resolved in the locale where they arise. *Islamic Republic of Iran,* 477 F.Supp. at 144. This policy rationale applies equally to the judicial review of an administrative decision which will be limited to the administrative record. *See Town of Ledyard v. United States,* Civ. No. 95–0880 (D.D.C. May 31, 1995).

Plaintiffs challenge a decision made by a Forest Service official located in Colorado, which directly affects Long Draw Reservoir and La Poudre Pass Creek located in the mountains of Colorado. A clear majority of the operative events took place in Colorado. As a result, the State of Colorado has a substantial interest in the resolution of the claims of this lawsuit. Moreover, suits such as this one, which involve water rights, environmental regulation, and local wildlife—

---

**20.** Plaintiffs' argument that the dispute should remain in Washington, D.C. because of its possible precedential impact cannot be credited by the court because decisions affecting the need for bypass flows are made on a case-by-case, fact-specific basis.

**21.** *Compare Savoy Industries, Inc.,* 587 F.2d at 1156. In *Savoy,* the court of appeals upheld the district court's denial to transfer where the de-

fendants moved to transfer the case one week prior to the scheduled trial date. In addition, congestion in the transferee court indicated that a more prompt trial could have been had in the District of Columbia. Finally, the District of Columbia court had a "familiarity with the allegations, characters, lawyers and previous history of litigation...." *Id.* at 1156–57.

matters that are of great importance in the State of Colorado—should be resolved in the forum where the people "whose rights and interests are in fact most vitally affected by the suit—the people of [Colorado]." *Adams v. Bell,* 711 F.2d 161, 167 n. 34 (D.C.Cir. 1983).[22] The importance and localized nature of this litigation is illustrated by the petitions for intervention filed by the State of Colorado and Water Supply, which represents the users of the Reservoir. In addition, the federal defendants have represented to the court (not contradicted by plaintiffs) that a great number of comments for and against the proposed action have been submitted by citizens of Colorado during the public comment phase, demonstrating the interest of the people of Colorado in this matter. This controversy arises from an administrative decision made in Colorado which directly affects Colorado's Arapaho and Roosevelt National Forests, water systems, wildlife, and more importantly, its people. As a result, this action shall be transferred to district court in Colorado.

**ORDERED** that the defendants' motion to transfer this action to the United States District Court for the District of Colorado be and is hereby **granted;** and it is

**FURTHER ORDERED** that all other motions be and are hereby **denied without prejudice.**

**SO ORDERED.**

**22.** An illustrative review of available literature demonstrates the importance of these issues to the people of Colorado. *See e.g.,* David Henry, *An affront to those who hunt and hike,* Rocky Mountain News, March 16, 1996, p. 48A ("Colorado citizens who hunt and fish and all others who care about the ecological health of our public lands should be aware that their representatives in Washington are actively undermining laws that protect our land and waters" referring to Sen. Hank Brown's proposed amendment to the national farm bill that would prohibit minimum instream flows.); Bob Saile, *On the rocks: shut-off dams give Poudre's trout little breathing room,* The Denver Post, April 20, 1994, p. D10 (arguing that in thwarting the Forest Service's right to allow minimum bypass flows, Washington politicians show little "sensitivity" to natural resource protection in Colorado.); The Associated Press, *Cubin Files Petition Against Water Regulation Change,* June 1, 1994 (quoting Colorado state Sen. Barbara Cubin who states that "[t]here seems to be no end to the Clinton administration's War on the West ... Ending multiple use of our federal land ... infringing on our right to own and bear arms and now stealing our water. The Clinton administration simply refuses to accept the fact that the states are better qualified to determine what is best for themselves, not outsiders in the federal government."); Keith White, *Allard prepares reservoir plan,* Gannett News Service, December 21, 1995 (describing the Trout Unlimited dispute and stipulating that the survival of trout in the Cache Padre River "depends on the [state's] Forest Service's guarantees that those dams will release sufficient water to keep the river flowing."); John Shurts, *FLMPA, Fish and Wildlife and Federal Water Rights,* 15 Envt'l L. 115 at 150, 115, 130, 149 (arguing that strong deference should be paid to state water laws in implementing federal water management procedures, citing the preservation of fish and wildlife in each state as a primary purpose for management of the public lands under FLMPA § 102(a), and pointing out that Colorado, among six other Western states, "specifically authorize[s] the state acting through a state water commissioner, water board, or natural resources department to set minimum stream flows for public interest reasons including fish and wildlife preservation."); Whitlesey, Norman K. and Ray G. Huffaker, *Water Policy Issues for the twenty-first century,* American Journal of Agricultural Economics, December 1, 1995 (discussing the importance of addressing public interest issues particular to each state in developing a comprehensive water rights policy, such as "fish and wildlife habitat, aquatic life, aesthetic beauty and water quality.")