**SHAWNEE TRIBE, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. CIV. 02–1175(RJL).**

United States District Court, District of Columbia.

Nov. 22, 2002.

Marcella Burgess Giles, McLean, VA, for Plaintiffs.

Daniel G. Steele, United States Department of Justice, Environment and Natural Resources, Washington, DC, for Defendants.

### MEMORANDUM ORDER

LEON, District Judge.

The plaintiff, Shawnee Tribe ("Tribe"), has filed a complaint and motion for a preliminary injunction against various federal agencies and their administrators and officials, including the United States, the General Services Administration, the De-

partment of Defense, the Department of Interior, and the Bureau of Indian Affairs ("the government").

At issue in the Tribe's suit is the disposal of the Sunflower Army Ammunition Plant ("SFAAP") property. The SFAAP, a 9,065 acre military reservation which is located approximately forty miles from Kansas City, Kansas, produced munitions for military use during the 1940s. Currently, the GSA has designated the SFAAP property as surplus property, subject to disposal. The Tribe argues that the SFAAP property is part of the Shawnee Reservation pursuant to various treaties, dating from the nineteenth century onward, between the Shawnee Tribe and the United States. As such, the Tribe argues that the property must be transferred to the DOI to be held in trust for the Tribe. According to the Tribe, however, the United States has refused to evaluate its claim to the SFAAP property and is planning instead to transfer the property to the general public. Notwithstanding the government's representations to the contrary, the Tribe believes this transfer to be imminent, and therefore requests that this Court enjoin the transfer or disposition of the SFAAP, other than to the DOI to be held in trust for the Tribe.

The government opposes the Tribe's request for a preliminary injunction and moves to transfer the case to the United States District Court for the District of Kansas. The government argues, in essence, that the interests of justice require the transfer of the case to Kansas, where the citizens, especially those in the county surrounding the SFAAP, have substantial interests in the outcome of the lawsuit. The government also argues that any decision regarding the disposal of the SFAAP property necessarily involves complex political, economic and governmental questions that are best resolved in the forum

where the SFAAP is located. Finally, from the point of view of judicial efficiency, the government notes that the district court in Kansas has already exercised jurisdiction over the SFAAP as it evaluates a number of complex environmental issues regarding its cleanup.[1]

Due to the substantial local interest in Kansas regarding the future use of the SFAAP property, the predominance of government action outside Washington, D.C., and the expertise of the Tenth Circuit courts in the analysis of Native American Indian treaties, the Court hereby GRANTS the government's motion to transfer venue to the United States District Court for the District of Kansas.

### Transfer to the United States District Court for Kansas is Appropriate Under 28 U.S.C. § 1404

■ Motions to transfer are left to the discretion of the Court to adjudicate on an " 'individualized, case-by-case consideration of convenience and fairness.' " *See Stewart v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). The Court must balance a number of "case-specific" factors when determining whether or not transfer of the case is appropriate. *Id.* The burden is on the party requesting transfer—here, the government—to show that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." *Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 323 (D.D.C.1991) (quoting *Consolidated Metal Products Inc. v. American Petroleum Institute*, 569 F.Supp. 773, 774 (D.D.C.1983)).

■ First, the Court must consider whether the government has satisfied the threshold requirement for transfer of actions to a different forum: whether the action might have been brought in the transferee forum in the first place. Section 1404(a) of 28 United States Code provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Tribe does not contest the government's assertion that the instant action could have been brought in the District Court for Kansas. The instant action is based on federal question jurisdiction,[2] and therefore can be based in "a judicial district in which a substantial part of the events or the omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 29 U.S.C. § 1391(b)(2). As the events which give rise to this lawsuit occurred in Kansas and the SFAAP is located in Kansas, the Court is satisfied that the government's request for transfer has satisfied the threshold requirement for transfer.

The more difficult question is whether the "balance of convenience" in transferring this case to Kansas weighs strongly in favor of the movants, therefore making transfer proper. *See Gross v. Owen*, 221 F.2d 94, 95 (D.C.Cir.1955). In *Trout Unlimited v. United States Dep't of Agriculture*, 944 F.Supp. 13, 17 (D.D.C.1996), Judge Ricardo Urbina of this District set forth a list of private and public factors,[3]

---

1. *See Taxpayers Opposed to OZ, Inc. v. David J. Barram, Administrator, General Services Administration,* Civ. No. 00–2136 ("TOTO"), discussed *infra.*

2. Plaintiff brings the instant action pursuant to 5 U.S.C. § 705 of the Administrative Procedure Act and 40 U.S.C. § 483(a)(2).

3. The court in *Trout Unlimited* explained that the relevant interests are the private interest

relevant when determining whether transfer is appropriate under Section 1404(a).

The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the ease of access to sources of proof.

The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; (3) the local interest in deciding local controversies at home.

■ As the Tribe correctly asserts, a plaintiff's choice of forum is afforded great deference, and is a "paramount consideration" in any determination of a motion to transfer. *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp. 22, 25 (D.D.C.1997). However, that choice is conferred less deference by the court when a plaintiff's choice of forum is not the plaintiff's home forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). *See also Thayer/Patricof Education Funding v. Pryor Resources Inc.*, 196 F.Supp.2d 21, 31 (D.D.C.2002)(explaining that plaintiff's choice of forum is "ordinarily afforded great deference, except where the plaintiff is a foreigner in that forum"); *The Wilderness Society v. Babbitt*, 104 F.Supp.2d 10,

12–13 (D.D.C.2000) (noting that plaintiff's choice of forum is entitled to less deference where there is an inadequate factual nexus between the chosen forum and the events in dispute); *Trout Unlimited v. United States Dep't of Agriculture*, 944 F.Supp. 13, 17 (D.D.C.1996) (noting that the showing a defendant must make in order to overcome the deference afforded to plaintiff's choice of forum "is lessened ... where ... transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state."); *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F.Supp. 1238, 1239 (D.D.C.1983) (finding that defendant's "burden is substantially diminished where ... transfer is sought to the forum where plaintiffs reside....").

Here, the government argues that because the District of Columbia is not the home forum of the Shawnee Tribe, the Tribe's choice of forum should be given less deference by the Court. The Tribe, however, argues that this proposition does not apply here, because a plaintiff's choice of forum that is not its home forum is afforded less deference only in those cases involving private party litigants. In those cases involving federal agencies, according to the Tribe, a court need not accord less deference to plaintiff's choice of forum. The Court believes this argument to be without merit. The cases cited by the Tribe in support of this argument make no distinction based on the public or private nature of the litigants when deciding whether plaintiff's choice of forum should be afforded less deference.[4] Moreover,

---

of the *parties* and the public interests of the court. *See Trout Unlimited*, 944 F.Supp. at 16 (emphasis added).

4. The Tribe cites the following cases as authority for its argument: *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *DeLoach v. Philip Morris Co.*, 132 F.Supp.2d 22 (D.D.C.2000) *Nichols v. Bureau of Prisons*, 895 F.Supp. 6 (D.D.C.1995); *Citi-*

courts in this district have a history of providing less deference to Native American Indian tribes when they have brought suit in this, their non-home forum.[5] Therefore, while the Tribe's choice of forum will be afforded some deference, it is not a "paramount consideration." Indeed, despite the Tribe's assertion that its individual members live across the United States, the Tribe's reservation is, in fact, located in Kansas.

Furthermore, while the Tribe argues that the events that give rise to this suit, (i.e., the decisions of the GSA regarding disposal of the SFAAP), occurred in Washington, the Court, after further examination during oral argument, does not find that the government's actions to date are even centered in this forum. While some officials from the GSA and the Department of Interior who work in the Washington, D.C. area are involved in the SFAAP dis-

posal,[6] the decisionmaking process, by and large, has not been substantially focused in this forum. Indeed, it became clear to the Court during oral argument that the Washington D.C. office of the GSA has not made a final decision on the Tribe's appeal of the GSA decision to continue the disposal process and, in fact, it refused to act on the appeal due to the this litigation.[7] Moreover, correspondence between the Tribe and the GSA offices in Fort Worth, TX and Auburn, WA clearly demonstrate that these field offices[8] have been actively involved in the determination of the Tribe's interest in the SFAAP and the possible disposal of the property.[9]

Of course, the Court acknowledges that the Tribe has been in communication with Bureau of Indian Affairs (BIA) officials in the Washington D.C. office of the BIA, and has received correspondence from those officials.[10] However, mere involvement on

---

*zen Advocates for Expansion v. Dole,* 561 F.Supp. 1238 (D.D.C.1983).

**5.** *See, e.g., Santee Sioux Tribe of Nebraska v. National Indian Gaming Commission,* Civ. No. 99–528, Slip op. (D.D.C. April 19, 1999); *Mescalero–Apache Tribe v. Janet Reno and Bruce Babbitt,* Civ No. 96–115, Slip op. (D.D.C. Feb. 5, 1996).

**6.** The Court recognizes that the Tribe has received letters from officials at GSA, Department of Interior, and the Bureau of Indian Affairs who work in the Washington, D.C. offices of those agencies.

**7.** *See* Hr'g Tr. at 63, 65 (counsel for the government explaining that no final decision has been made as to the Tribe's appeal of the GSA decision to go forward with the disposal). *See also* Amended Compl, Ex. 14 (letter dated August 1, 2002, from Samuel Morris, associate General Counsel for the Real Property Division in the Washington D.C. office of the GSA, to the Tribe explaining that the GSA would not act on the Tribe's appeal because the matter was now in litigation before this Court).

**8.** The Department of Interior has a regional office in Oklahoma, but it is not clear what, if

any, involvement it has had in this case to date.

**9.** The GSA's office in Fort Worth, TX through its Acting Regional Administrator, Mr. W. Leighton Waters, and the GSA office in Auburn, WA, through Mr Blaine Hastings, administrator for Real Property Disposal, have been *continually corresponding* with the Tribe regarding the SFAAP disposal and the Tribe's claim to the property. *See* Amended Compl, Exs. 2, 5, 6, 11.

**10.** GSA is the entity responsible for making the ultimate decision regarding the disposal of the SFAAP property. However, the BIA is responsible for evaluating tribal claims to excess or surplus lands and deciding whether it will become involved in the GSA disposal process as a trustee on behalf of the tribe. *See* Amended Compl, Ex. 12 (letter from Mark Alan Duffy, Senior Regional Counsel for the Greater Southwest Region of GSA, to David Moran, Attorney/Advisor to the Department of Interior regarding the jurisdiction of GSA and the Department of Interior Bureau of Indian Affairs over the Tribe's claim to the SFAAP). To date, the BIA has not issued its opinion regarding the Tribe's claim to the SFAAP, and

the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative. In *DeLoach v. Philip Morris Co., Inc.*, 132 F.Supp.2d 22, 25 (D.D.C.2000), Judge Kessler explained that venue is not appropriate in the District of Columbia, where "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process." While the situation in *DeLoach* in regard to venue is somewhat different than the case at bar in that the government was not a party to that litigation, the Court believes that the sentiment espoused by the court in *DeLoach* applies here, especially where the involvement of government officials in Washington has not been significant, and there is no real connection between the District of Columbia and this litigation other than the presence of federal agencies in this forum.

In regard to the convenience of the parties and witnesses, it appears to be slightly more convenient for the parties and witnesses to try the case in Kansas. While the Tribe acknowledges that its members are located "across the nation,"[11] it also admits that government's counsel and staff who are assigned to this litigation work from offices in Washington D.C., Auburn, WA, and Fort Worth, TX. Surely Kansas is more convenient and less expensive to travel to than Washington, D.C. for the Texas and Washington state-based staff and counsel. But as the balance of convenience in favor of Kansas seems limited, the Court concludes that the convenience of the parties is not clearly one way or the other.

What the Court finds to be the most persuasive factor favoring transfer of this litigation to Kansas is the local interest in deciding a sizeable local controversy at home. How the SFAAP property is allocated directly impacts the counties and neighborhoods surrounding the SFAAP. The SFAAP is a 9,065 acre piece of property located proximate to a major metropolitan center. Its division and allocation necessarily implicates considerable local economic, political, and environmental[12] interests. The Court is particularly concerned about exercising jurisdiction over a case that will affect the development of a massive area in Kansas in a venue with which Kansas citizens have little to no connection. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Moreover, the central issue in this case[13] is whether lands allotted to Shaw-

whether it will participate in the GSA disposal decision as a trustee for the Shawnee Tribe.

11. Pl.'s Opp'n at 7.

12. Currently, litigation is pending before the District Court for the District of Kansas, brought by Kansas taxpayers challenging the cleanup of contaminated land on the SFAAP. *See infra* text.

13. The Tribe claims that its reservation is within the SFAAP property; however, the government disputes whether the reservation still exists. Section 483(a) of 40 United States Code provides that transfer of tribal lands to the Department of Interior to be held in trust is mandatory, so long as the tribe has been federally recognized *and* the lands are within the tribal reservation. While the Tribe claims that it is not arguing for title to the land, but is instead seeking enforcement of a statutory requirement that the reservation be transferred to the Department of Interior to be held in trust, *see* Hr'g Tr. at 15–16, it seems to the Court that determining whether or not the Tribe's reservation still exists is a preliminary matter that must be resolved before the land can be transferred to the Department of Interior to be held in trust for the Tribe. Such a determination would necessarily involve examination of property transfer records. This fact, and the substantial involvement of federal field offices outside the District of Columbia, demonstrate that there is little factual nexus between this forum and the case at bar.

nee Tribe members under the Treaty of 1854 are still within the reservation that now allegedly comprises the SFAAP property, or whether they were deemed public and therefore ceded to the government. Resolving this preliminary issue will, in turn, determine whether the SFAAP is within the present day Shawnee reservation. If the Department of Interior resolves this question in the Tribe's favor, transfer of the tribal lands to the Department of Interior to be held in trust for the Shawnee Tribe is mandatory under 40 U.S.C. § 483(a). It seems to the Court that this determination would require not only knowledge and experience in interpreting Native American Indian treaties, but examination of local property records and deeds and other documents: matters about which the courts of the Tenth Circuit are much more experienced and knowledgeable.

The Court is also persuaded that transfer is appropriate by virtue of the fact that a possibly related case is already before the District Court for Kansas: *Taxpayers Opposed to OZ, Inc. v. David J. Barram, Administrator, General Services Administration*, Civ. No. 00–2136 ("TOTO"). The Tribe attempts to downplay the significance of TOTO's pendency before the District Court for Kansas by arguing that the substance of that lawsuit is in no way similar to the case at bar. TOTO is a challenge by Kansas taxpayers, and raises environmental and administrative concerns under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.;* the APA, 5 U.S.C. § 551, *et seq.;* and the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*, regarding the transfer of the SFAAP property. While the posture of TOTO may be somewhat different than the case at bar, it still involves central questions regarding the future of the SFAAP property, the resolution of which by the District Court in Kansas

must precede a final decision on the property's disposal. Transferring the instant action to a jurisdiction that has considerable experience in cases involving the allocation of tribal lands will serve the interests of judicial economy and efficiency.

For the reasons set forth above, the defendants' motion to transfer this case to the District Court for the District of Kansas is hereby GRANTED.

SO ORDERED.