Michael HOLLAND, et al., Plaintiffs,

v.

A.T. MASSEY COAL, et al., Defendants.

No. 03–1523 (RJL).

United States District Court, District of Columbia.

Feb. 6, 2004.

Howard Robert Rubin, Shea & Gardner, Helen G. Kirsch, Bernard J. Casey, Reed Smith LLP, Mary Lou Smith, Howe, Anderson & Steyer, P.C., Michele Harrington Murphy, Akin Gump Strauss Hauer & Feld LLP, Lora A. Brzezynski, McKenna Long & Aldridge LLP, Elliott Schulder, Covington & Burling, R. Michael Smith, Dechert LLP, Washington, DC, for Plaintiffs.

Margaret Summers Lopez, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is defendants' motion to dismiss or, in the alternative, to transfer venue to the United States District Court for the District of Maryland. Certain defendants ("Maryland Litigants") have moved to transfer this action because they are parties to a related litigation in Maryland. Both the Maryland Litigants and certain other defendants in this case ("Additional Defendants") argue that transfer of this action would serve the purposes of judicial economy and convenience of the parties and witnesses. This Court agrees and GRANTS the defendants' motion to transfer.

### Factual Background

At issue in this case is the amount of health benefit premium that the Maryland Litigants and other defendant coal operators must pay to the United Mine Workers of America Combined Benefit Fund ("Combined Fund"), pursuant to § 9704 of the Coal Retiree Health Benefit Act of 1992 ("Coal Act"). 26 U.S.C.

§ 9704.[1] Under § 9704(b)(2) of the Act, Congress charged the Commissioner of Social Security ("Commissioner") with the responsibility of calculating the amount assigned operators are required to pay into the Combined Fund. The Trustees for the Combined Fund ("Trustees" and "plaintiffs") act as fiduciaries for the fund, collecting the premium and using the proceeds, along with other revenue, to provide health benefits to coal industry retirees.

For several years, the Trustees and those coal operators who are required to pay premiums ("assigned operators") have been litigating in this Circuit and the Eleventh Circuit the proper meaning of the premium formula set forth under the Coal Act.[2] *See generally Holland v. Apfel,* 2000 U.S. Dist. LEXIS 6134 (D.D.C. Feb. 25, 2000) (*"Holland I"*), *aff'd in part and rev'd in part by Holland v. National Mining Association,* 309 F.3d 808 (D.C.Cir. 2002); *National Coal Ass'n v. Shalala,* 1995 U.S. Dist. LEXIS 21116 (N.D. Ala. June 2, 1995), *amend. sub. nom. Nat'l Coal Ass'n v. Chater,* 1995 U.S. Dist. LEXIS 21125 (N.D.Ala.N.D.Ala. July 29, 1995), *aff'd* 81 F.3d 1077 (11th Cir.1996) (*"NCA v. Shalala"*). Much of this litigation has revolved around the interpretation of the term "reimbursements" in the premium formula, and whether the calculation of the premium should include payments received by the Combined Fund from the Health Care Financing Administration ("HCFA") for Medicare costs in excess of the Fund's actual expenses.[3]

1. The Coal Act merged two preexisting health benefit funds for coal industry retirees, the United Mine Workers of America (UMWA) 1950 Benefit Plan and the 1974 UMWA Benefit Plan and Trust.

2. Under the Coal Act, assigned operators are required to pay a health benefit premium set by the Commissioner of Social Security, equal to -

    "[T]he sum of (A) the amount determined by dividing (i) the aggregate amount of payments from the 1950 UMWA Benefit Plan and the 1974 UMWA Benefit Plan for health benefits (less *reimbursements* but including administrative costs) for the plan year beginning July 1, 1991, for all individuals covered under such plans for such plan year, by (ii) the number of such individuals, plus (B) the amount determined under subparagraph (A) multiplied by the percentage (if any) by which the medical component of the Consumer Price Index for the calendar year in which the plan year begins exceeds such component. . ."

    26 U.S.C. § 9704(b)(2). (Emphasis added).

3. The health benefit premium was initially calculated in 1993 by the Commissioner's statutory predecessor, the Secretary of Health and Human Services ("the Secretary"), to include reimbursements of $156.8 million, an amount representing HCFA payments for actual Medicare expenses incurred by the Combined Fund. The total payments made by HCFA to the Combined Fund between the years of 1991 and 1992 were approximately $182.3 (an amount exceeding the Plan's actual administrative costs by $25.5 million).

In *NCA v. Shalala,* seven assigned operators challenged the initial premium calculation and district court agreed with their claim that the Commissioner should include the full $182.3 million in calculating the premium. 1995 U.S. Dist. LEXIS 21116, at*18 (N.D.Ala. July 20, 1995). The district court ordered the Social Security Administration to recalculate the premium, and the Eleventh Circuit affirmed. 81 F.3d 1077 (11th Cir.1996).

Subsequent to the decision in *NCA v. Shalala,* in *Holland I,* the Trustees brought a suit seeking injunctive relief and a declaratory judgment that the term "reimbursement" does not include amounts exceeding actual plan expenses. *Holland v. Chater,* 90 F.3d 688 (D.D.C.1996). The district court upheld the initial interpretation of the term "reimbursement" by the Secretary, which did not include amounts exceeding actual plan expenses. *Holland v. Apfel,* 2000 U.S. Dist. LEXIS 6134, *22 (D.D.C. Feb. 25, 2000). On appeal, the D.C. Circuit reversed the district court opinion upholding the initial premium calculation, finding that the interpretation of the term "reimbursement" should be addressed by the agency in the first instance.

On June 10, 2003, pursuant to the remand order from the D.C. Circuit in the *Holland I* case, the Commissioner issued a determination in a letter to the Trustees ("June 2003 Premium Decision"), setting forth a two-tier premium structure.[4] A lower premium consistent with Eleventh Circuit precedent in *NCA v. Shalala* was applied only to parties covered by that case, and a higher premium based on the initial interpretation of "reimbursement" by the Commissioner's statutory predecessor was applied to all other assigned operators. The letter expressed the Commissioner's belief that the higher premium is consistent with the text and the structure of the Coal Act.

On July 15, 2003, the Trustees brought a new action in this Court ("*Holland II*"), seeking a ruling that the defendant operators (whom the Trustees believe are not subject to the *NCA v. Shalala* decision) are required to pay the higher premiums into the Combined Fund at rates set by the Commissioner in the June 2003 Premium Decision. There is, however, a related pending action in the District of Maryland that was brought prior to *Holland II* by ninety-eight assigned operators against the Commissioner and the Trustees, challenging the June 2003 Premium Decision: *i.e., A.J. Taft v. Barnhart,* No. 1:03–cv–03389–RDB (D.Md.). Indeed, seventy-six of the ninety-eight plaintiffs in the *A.J. Taft v. Barnhart* case are the Maryland Litigants in the *Holland II* case.[5] Moreover, the *A.J. Taft v. Barnhart* case was

originally filed in the Northern District of Alabama, but later transferred on November 14, 2003 by District Judge Proctor after due consideration of the Trustees' motion to transfer the case to the District of Columbia. *A.J. Taft v. Barnhart,* 291 F.Supp.2d 1290 (N.D.Ala.2003). Judge Proctor concluded in his opinion that venue more appropriately lies in Maryland, because the majority of principal material witnesses and documents relating to the June 2003 Premium Decision are likely to be located in the district where the Commissioner who had the sole authority to calculate the premium made the decision and maintains her principal office. *Id.* at 1311. For the following reasons, this Court similarly finds that it would serve both the interests of judicial economy and convenience to transfer this related action to the District of Maryland.

### *Discussion*

■ Defendants seek to transfer this case pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute vests discretion in the district court to adjudicate motions for transfer on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612,

---

*Holland v. National Mining Ass'n,* 309 F.3d 808, 819 (D.C.Cir.2002).

4. Letter from Nancy Veillon, Associate Commissioner, Office of Program Benefits, Social Security Administration, to Michael H. Holland, Chairman, Board of Trustees, UMWA Combined Benefit Fund regarding Determination of the Per–Beneficiary Health Benefit Premium under the Coal Industry Retiree Health Benefit Act of 1992 (June 10, 2003).

5. Forty-three of the non-Maryland litigants in this case have indicated that they support the Maryland litigants' motion to transfer this action to the District of Maryland. Memorandum of Additional Defendants Supporting Motion to Dismiss or Transfer Case ("Mem. of Add'l Defs.").

622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). Indeed, courts in this circuit must be particularly careful in examining challenges to venue "to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C.Cir.1993); *see also Sierra Club v. Flowers*, 276 F.Supp.2d 62, 65 (D.D.C.2003).

▮ Under § 1404(a), the moving party bears the burden of establishing that the transfer is proper. *See Trout Unlimited v. Department of Agriculture*, 944 F.Supp. 13, 16 (D.D.C.1996); *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp. 525, 526 (D.D.C.1987). To do so it must first show that the plaintiff could have brought the action originally in the proposed transferee district. *Van Dusen*, 376 U.S. at 613, 84 S.Ct. 805. Here there is no question that the Trustees could have originally brought this action in the District of Maryland as a counterclaim in the *A.J. Taft v. Barnhart* case. *See* Maryland Litigants' Mot. to Dismiss or Transfer, at 23–24.[6] As such, the Maryland Litigants must next demonstrate that "considerations of convenience and the interest of justice weigh in favor of transfer." *Trout Unlimited*, 944 F.Supp. at 16. Private interest considerations traditionally include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Sierra Club*, 276 F.Supp.2d at 65; *Trout Unlimited*, 944 F.Supp. at 16. Public interest considerations, by contrast, include (1) the transferee's familiarity with governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding controversies at home. *Id.* In addition to these considerations, a transfer may also be appropriate where there is ongoing related litigation in another jurisdiction. *Biochem Pharma, Inc. v. Emory University*, 148 F.Supp.2d 11, 14 (D.D.C.2001) (citing *In re Scott*, 709 F.2d 717, 721 n. 10 (D.C.Cir.1983)); *Smiths Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.*, 728 F.Supp. 6, 7 (D.D.C.1989). For the following reasons, the Court finds that the "balance of convenience of the parties and witnesses and the interest of justice" weigh in favor of a transfer. *Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 323 (D.D.C.1991) (quoting *Consolidated Metal Products Inc. v. American Petroleum Institute*, 569 F.Supp. 773, 774 (D.D.C.1983)).

▮ As to the private interest considerations, although courts generally afford substantial deference to a plaintiff's choice of forum, this deference is mitigated here because "the connection between the controversy, the plaintiff, and the chosen forum is attenuated." *Airport Working Group of Orange County v. U.S. Department of Defense*, 226 F.Supp.2d 227, 231 (D.D.C.2002); *see also Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 12–13 (D.D.C.2000); *Trout Unlimited*, 944 F.Supp. at 17. The plaintiffs merely argue that their action belongs in this jurisdiction because: (1) they *administer* the fund in the District of Columbia, and (2) counsel for plaintiffs and the defendants are located here. Plaintiff Trustee's Consolidated Opposition at 36 ("Pl.Opp."). These facts, however, pale in comparison to the fact

---

**6.** In transferring *A.J. Taft v. Barnhart*, Judge Proctor found that venue was proper for the claims asserted in that action under 28 U.S.C. § 1391(b) as to the Trustee defendants because the case requested injunctive and declaratory relief regarding the June 2003 Premium Decision, a "principal event" that occurred in Maryland. *See A.J. Taft v. Barnhart*, 03–cv–1390–S, slip op. at 24–25 (N.D.Ala., November 14, 2003).

that the agency whose decision they ask this Court to evaluate is located in Maryland. *See, e.g., Trout Unlimited,* 944 F.Supp. at 17–18 (transfer proper where none of the decision-making at issue occurred in the District of Columbia). Moreover, while "[t]he location of counsel carries little, if any weight in analysis under § 1404(a)," *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 324 (D.D.C.1991), the convenience of potential witnesses and access to sources of proof in this case weigh in favor of a transfer to Maryland.

With regard to the public interest considerations raised in this case, the fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a). *See In re Scott,* 709 F.2d 717, 721 n. 10 (D.C.Cir.1983); *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 324 (D.D.C. 1991); *Smiths Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.,* 728 F.Supp. 6, 7 (D.D.C.1989). Simply stated, judicial economy would not be best served by having similar claims proceed on parallel tracks in neighboring jurisdictions.[7] Moreover, the District of Maryland is undoubtably more familiar and experienced with the laws and legal actions governing an agency whose principal office is located within its jurisdiction. *See Trout Unlimited,* 944 F.Supp. at 19. Accordingly, the public interest consider-ations additionally weigh in favor of a transfer to the District of Maryland.

### ORDER

Therefore, after due consideration of the defendants' motion, and the opposition thereto, it is hereby **ORDERED** on this 6th day of February, 2004, that the Maryland Litigants' Motion to Transfer Venue [# 92] is **GRANTED.**

**SO ORDERED.**

---

**7.** The plaintiffs also argue, in effect, that prior litigation in this District relating to their current claims should somehow be an added basis for the action to remain here. Pl. Opp. at 39. While the Court might agree if a party could show how judicial economy or other public interest considerations could be served by doing so, the plaintiffs in this case fail to establish a link between the Commissioner's June 2003 Premium Decision and the D.C. Circuit's opinion in *Holland I* sufficient to warrant keeping their action in this District. The current action seeking judicial review of a new agency decision cannot be viewed as a continuation of *Holland I.* Indeed, in denying the plaintiffs' motion to reopen *Holland I* to include additional claims following the June 2003 Premium Decision, Judge Kollar–Kotelly found that "[b]ased on the recent filings, it appears that the Social Security Administration has adopted a new approach to calculating premiums under the Act which forms the basis of the Trustees's requests...As such, the Court DENIES the motion and instructs the Trustees that they may pursue whatever grievances they have with the Social Security Administration decision by filing a new lawsuit." *Id.* at 17 (citing Judge Kollar–Kotelly's July 8, 2003 order in *Holland I* ).