**GREATER YELLOWSTONE COALITION et al.,
Plaintiffs,**

v.

**Dale BOSWORTH, Chief, U.S. Forest Service, et al., Defendants.**

No. CIV.A.01–1516 (RMU).

United States District Court, District of Columbia.

Dec. 18, 2001.

Timothy Joseph Preso, EarthJustice Legal Defense Fund, Bozeman, MO, for plaintiffs.

John P. Almeida, Martin Lalonde, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for defendants.

*MEMORANDUM OPINION*

URBINA, District Judge.

DENYING THE DEFENDANTS'
MOTION TO TRANSFER

## I. INTRODUCTION

This matter comes before the court upon the defendants' motion to transfer this action to the District of Montana. This case is about statutory construction, cattle-grazing permits, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Rescissions Act,[1] Pub.L. No. 104–

---

1. The statute's full name is the Emergency Supplemental Appropriations for Additional Disaster Assistance, for Anti–Terrorism Initiatives, for Assistance in the Recovery from the

19, § 504, 109 Stat. 194 (1995), and bison, also known as buffalo. The plaintiffs, five conservation groups, filed a complaint pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 701 *et seq.*, alleging that the U.S. Forest Service failed to comply with Section 504 of the Rescissions Act when it renewed the cattle-grazing permit for the Horse Butte Allotment ("HBA"), without analyzing the environmental impact of this permit. The plaintiffs also claim that defendants' granting of this permit violates NEPA. The conservation groups are concerned about this permit because it poses serious consequences for the bison in Yellowstone National Park. For the following reasons, the court will deny the defendants' motion to transfer.

## II. BACKGROUND

The remnants of the bison herds that once roamed the Western United States exist today in Yellowstone National Park. *See id.* ¶¶ 20–21. Because bison carry a bacteria that causes a contagious disease among cattle, the National Park Service, the Forest Service, and the State of Montana capture and kill bison roaming on national forest land used for private cattle grazing, such as the HBA. *See id.* ¶¶ 21–22. On December 19, 2000, the Forest Service allegedly renewed a private cattle owner's grazing permit for the HBA for an additional 10 years without first assessing the environmental impact of this extension. *See* Compl. ¶ 37.

The treatment of bison on HBA provides the background for this lawsuit which involves more directly statutory construction, grazing permits, NEPA, and the Rescissions Act. The plaintiffs filed a complaint in this court on July 11, 2001, pursuant to the Administrative Procedure Act, alleging that the "Forest Service's failure to conduct any environmental analysis of

the HBA before renewing the grazing permit for the allotment violates NEPA and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." Compl. ¶¶ 44–46. The plaintiffs also claim that the "Forest Service's failure to adhere to its NEPA compliance schedule for the HBA violates the Rescissions Act and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." *Id.* ¶¶ 39–42.

The plaintiffs consist of the following conservation groups: Greater Yellowstone Coalition, headquartered in Montana; Intertribal Bison Cooperative, headquartered in South Dakota; Defenders of Wildlife, headquartered in the District of Columbia; National Wildlife Federation, headquartered in Reston, Virginia with offices in the District of Columbia and Montana; Wyoming Wildlife Federation, headquartered in Wyoming; and Gallatin Wildlife Association, headquartered in Montana. *See* Compl. ¶¶ 2–7. The plaintiffs' complaint names three defendants: Dale Bosworth, in his official capacity as Chief of the U.S. Forest Service, residing in Washington, D.C., U.S. Department of Agriculture; Rich Inman, in his official capacity as Acting Forest Supervisor of the Gallatin National Forest, residing in Bozeman, Montana; and Gary L. Benes, in his official capacity as a District Ranger of the Hebgen Lake Ranger District. of the Gallatin National Forest, residing in West Yellowstone, Montana. *See id.* ¶¶ 10–13.

The Forest Service reissued the grazing permit for an additional 10 years pursuant to section 504(b) of the Rescissions Act, postponing the NEPA analysis of the HBA to 2004. *See id.* ¶ 38. According to declarations submitted by both parties, the decision to reissue the permit, along with adjustment to the analysis schedule, was

Tragedy That Occurred at Oklahoma City, and

Rescissions Act, 1995.

made by officials in Washington, D.C. and officials at the Gallatin National Forest in Montana. *See generally* Inman Decl.; Trevino Decl.[2]

In her declaration, Karen Kovacs Trevino explains that, from July 1998 to November 2000, she served as the Senior Counselor to the Assistant Secretary of the U.S. Department of the Interior for the Fish, Wildlife and Parks, and from November 2000 to May 2001, she was a Special Assistant to the Director of the National Park Service. *See* Trevino Decl. ¶ 1. In the late fall of 2000, Ms. Trevino was involved in discussions with Department of Interior officials and U.S. Forest Service officials *in Washington, D.C.* concerning the impact of the HBA grazing permit on the Yellowstone National Park's bison herd. *See id.* ¶ 2. Three of the meetings addressing the HBA grazing permit occurred at the Forest Service's headquarters in Washington, D.C. *See id.* ¶ 6.

The defendants have moved to transfer venue to the District of Montana, specifically to United States District Judge Charles C. Lovell. The plaintiffs oppose the defendants' motion, asserting that this is a case requiring statutory interpretation and thus involves national, not merely local, concerns.

## III. ANALYSIS

### A. Legal Standard for Motion to Transfer Venue

Section 1404(a) provides that for the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). As the moving party, the defendant bears the burden of establishing that the transfer of this action is proper. *See Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp. 525, 526 (D.D.C.1987). Courts have discretion to adjudicate motions to transfer according to case-by-case considerations of both convenience and fairness. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

If venue *could* be proper in the transferee district, courts considering Section 1404(a) motions must evaluate the convenience of the parties, the convenience of the witnesses, and the interests of justice. *See* 28 U.S.C. § 1404(a). In exercising its broad discretion, courts should balance case-specific factors which include the private interests of the parties and public interests such as efficiency and fairness. *See Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 12 (D.D.C.2000). The private-interest factors include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

---

**2.** The defendants cite to the declaration of Rich Inman, without specifying a page or paragraph number, to argue that the decisions relating to the timing of the NEPA analysis for the HBA and the grazing permit reissuance occurred *in Montana, not in Washington, D.C.* The court, however, reads Mr. Inman's declaration differently. Mr. Inman does not demonstrate that *no* decisions relating to the issues in this case were made in Washington, D.C. In fact, when Mr. Inman discusses making decisions relevant to the grazing permit for the HBA he fails to state where he or other decision-makers were located. *See* Inman Decl. ¶¶ 5, 6, 7, 9, 10, 11.

128

*See Trout Unlimited v. U.S. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996) (citations omitted). The public-interest considerations include: (1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See id.* In the instant case, a balancing of these various interests supports denial of the motion to transfer.

**B. Private–Interest Considerations**

Because several of the plaintiffs and defendants reside in Montana and some of the operative facts occurred in Montana, the court determines for the purpose of this opinion that venue *could* be proper in the District of Montana. *See* 28 U.S.C. § 1391(e). Moving beyond the threshold question, the court addresses the private and then the public considerations. Most critical to this analysis of the private factors is whether the nexus between the operative facts and parties to the District of Columbia is sufficient to warrant the court giving deference to the plaintiffs' choice of forum. The court also considers the defendants' interests supporting their choice of forum.[3]

▇▇▇ The court must afford substantial deference to the plaintiffs' choice of forum. *See Air Line Pilots Ass'n,* 672 F.Supp. at 526. However, this deference is mitigated if the plaintiffs' choice of forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 165

(D.D.C.1995) (*quoting Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142, 144 (D.D.C.1979)). Moreover, the defendants' burden in a motion to transfer decreases when the plaintiffs' choice of forum has no meaningful nexus to the controversy and the parties. *See Wilderness Society,* 104 F.Supp.2d at 12–13.

The defendants charge that because the plaintiffs and the facts of this case have little nexus to the District of Columbia, the court should not give deference to the plaintiffs' choice of forum. *See* Mot. to Transfer at 15–16. The defendants further argue that the case should be transferred to the District of Montana because the decision to issue grazing allotments and the effects of these decisions on bison management are inherently related to that district. *See id.* at 16. In contrast, the plaintiffs assert that their choice of forum deserves deference because the case involves the interpretation of federal statutes, not simply the management of bison. *See* Pls.' Opp'n at 18. Further, the plaintiffs maintain that high-ranking government officials in Washington, D.C. were involved in inter-agency discussions regarding the reissuance of the HBA grazing permit. *See id.* at 9; Trevino Decl. The court notes that while the defendants dispute the fact that significant discussions regarding the grazing permit occurred in the District of Columbia, the defendants, who have the burden, present no evidence that disproves the plaintiffs' evidence. *See* Part II, *supra.*

▇▇▇ The court determines that because both of the plaintiffs' counts focus on interpretation of federal statutes, and because federal government officials in the District

---

3. Because this is an APA review case that will in all likelihood be decided on motions for summary judgment and will not require a trial, *see* Joint Mot. for Stip. Sched. Order at 2, the convenience of witnesses is not relevant. *See Trout Unlimited,* 944 F.Supp. at 18. Regarding the convenience of parties and ease of access to sources of proof, the defendants do not focus on these factors in their motion to transfer this case.

of Columbia were involved in the decision to reissue the HBA grazing permit, this case has some national significance and has a nexus to the District of Columbia. *See* Pls.' Opp'n at 9–11. In addition, two of the five plaintiffs, Defenders of Wildlife and the National Wildlife Foundation, have offices in the District of Columbia. *See id.* Furthermore, this action is distinguishable from other cases in which judges transferred cases out of the District of Columbia. For example, in *Trout Unlimited* and *Hawksbill Sea Turtle,* none of the plaintiffs resided in the District of Columbia and none of the decisionmaking occurred in the District of Columbia. *See Trout Unlimited,* 944 F.Supp. at 16–17; *Hawksbill Sea Turtle v. FEMA,* 939 F.Supp. 1, 3 (D.D.C.1996). Accordingly, the court concludes that this action has sufficient nexus to the District of Columbia and therefore deserves deference in its choice of forum.

Next, the court considers the defendants' choice of forum. The defendants' have legitimate reasons for preferring the District of Montana. Two of the three defendants are located in the District of Montana, many people involved with the reissuance of the HBA grazing permit are located there, and the permit at issue is for land in Montana. *See* Mot. to Transfer at 1, 14. In addition, three of the plaintiffs have offices in the District of Montana. *See id.* at 14. While the operative facts and impact of this case are linked to this district, they are also linked to the District of Montana. Considering that the plaintiffs' choice of forum deserves deference, however, the plaintiffs' interests prevail.

## C. Public–Interest Considerations

 The court also evaluates the public considerations that are relevant to this case. The local interest in having local issues decided locally, the transferee's familiarity with the governing laws, and the possible pendency of a related case can weigh in favor of a transfer. *See Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 324 (D.D.C.1991). On the other hand, public-interest considerations that weigh against a transfer include the possibility that the defendants are forum shopping. *See Ferens v. John Deere Company,* 494 U.S. 516, 527, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990).

Considering the transferee's familiarity with governing laws and the possible local interest in having this case decided in Montana, the court notes that this case involves interpretation of federal statutes. In *Trout Unlimited,* this court transferred a case to the District of Colorado because the case involved a very localized conflict with little national significance and the District of Colorado was more familiar with the governing state laws. *See Trout Unlimited,* 944 F.Supp. at 19. Unlike the plaintiffs' claim in *Trout Unlimited,* however, this case does not involve any issues of *state law* and has some national significance. *See id.* There is, therefore, no advantage to having a federal court familiar and experienced with the state law of Montana adjudicate this action.

 The defendants argue that transferring this action to the District of Montana, specifically to Judge Lovell, would promote judicial economy because Judge Lovell is presiding over and has presided over closely related issues. *See* Mot. to Transfer at 2, 10. But the potentially related case, *Cold Mountain, Cold Rivers, Inc. v. Montana Dept. of Livestock,* C.A. 01–27 ("*CMCR*"), is very different from the instant case: *CMCR* focuses on the impact of the Horse Butte Capture Facility on eagles and other birds, whereas this case focuses on the reissuance of the Horse Butte grazing permit and addresses its effect on the bison. *See id.* Ex. 6 ¶ 2.; Compl. While a pending related action in a transferee forum could support a deci-

sion to transfer a case to that forum, *see Armco Steel Co.,* 790 F.Supp. at 324, the pendency of *CMCR* does not support a transfer.

Viewing the totality of circumstances, the defendants' request to transfer this case to a specific judge is suspect. *See* Mot. to Transfer at 2, 18–20; Pls.' Opp'n at 12, 17. The plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping weighs against granting the defendants' motion. *See Ferens,* 494 U.S. at 527, 110 S.Ct. 1274. After assessing the facts and law pertaining to the relevant public and private considerations, the court concludes that it should not transfer this case.

## IV. CONCLUSION

For all these reasons, the court denies the defendants' motion to transfer. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of December, 2001.