## PYROCAP INTERNATIONAL CORP. Plaintiff,

v.

## FORD MOTOR CO., et al. Defendant.

### No. CIV.A. 02–346 EGS.

United States District Court, District of Columbia.

March 31, 2003.

George L. Garrow, Jr., Esquire, Garrow & Evans LLP, Washington.

Sandra M. Freney, Esquire, Springfield, VA.

Scharn Robinson, Esquire, Paul, Hastings, Janofsky & Walker LLP, Washington.

Oliver C. Mitchell, Jr., Ford Motor Company, Dearborn, MI.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff, Pyrocap International Corporation ("Pyrocap"), a manufacturer of fire extinguishing chemicals and equipment, commenced this action against defendant Ford Motor Company, a motor vehicle manufacturer, and its employee, Hank E. Budesky, alleging racial discrimination in violation of 42 U.S.C. § 1981, commercial disparagement, and tortious interference with prospective economic advantage. Presently pending before the Court is defendant's motion to dismiss for failure to state a claim, or in the alternative, to transfer the case to the Eastern District of Michigan. For the reasons stated below, defendant's motion to transfer is hereby **GRANTED**, and this case shall be transferred to the District Court for the Eastern District of Michigan.

### I. BACKGROUND

Plaintiff is an African American owned and managed Virginia corporation. Its principal place of business is located in Springfield, VA. Compl. ¶ 1. Plaintiff also conducts business within the District of Columbia. Compl. ¶ 1. Since 1991, Pyrocap has manufactured, sold, and distributed fire suppression chemicals and equipment, including an environmentally safe fire suppression chemical known as PYRO-CAP B–136 concentrate, invented by a Native American Pyrocap board member and stockholder, John States. *Id.* at ¶¶ 8–9. Plaintiff alleges that PYROCAP B–136 has been successfully used by the Fire Departments of the cities of Detroit, MI, Roosevelt, NY, Atlanta, GA, Columbus, GA, and Fresno, CA, as well as the City of Detroit Water and Sewage Department. *Id.* at ¶¶ 10–22. Additionally, research studies conducted by private laboratories, as well as government agencies, have

found PYROCAP B–136 to be both safe and effective. *Id.* at ¶¶ 17–18.

Plaintiff alleges that in the fall of 1994, Mr. Elliot Hall, a Ford executive officer located in Washington, D.C., forwarded to Derrick A. Humphries, Pyrocap's "Master Salesman/Distributor for PYROCAP B–136 in Michigan," a copy of a document written by Ford Fire Protection Engineer Hank E. Budesky entitled "Review of Pyrocap B–136." *Id.* ¶ 23. Plaintiff contends that statements made therein, including allegations that the Detroit Fire Department only used PYROCAP B–136 on a single occasion and that its use by that Department led to an increase, rather than a decrease, in the size of a fire, that PYROCAP B–136 had a short shelf-life of two (2) years, and that greater amounts of the product were needed to extinguish fires, thereby increasing the overall cost of its use, were false. *Id.* ¶ 26. Plaintiff alleges, on information and belief, that Mr. Hall received the report from Dr. Ray Jensen, Director of Ford's Minority Supplier Development program, who in turn received it directly from Mr. Budesky. *Id.* ¶ 25. Accordingly, plaintiff asserts that Mr. Budesky was aware that Pyrocap was a "minority managed company." *Id.* ¶ 29.

From 1994 to 1998, members of Pyrocap's sales and marketing staff made repeated efforts to contact Ford, forward product information and research reports to the company, and secure the withdrawal of the allegedly false statements made in the "Review of Pyrocap B–136" document. *Id.* ¶¶ 27, 32, 33, 36–41. On one such occasion, in November of 1998, Pyrocap salesman Brian Sulzer made a sales call on Mr. Budesky to solicit sales of PYROCAP B–136 two-and-a-half gallon hand-held fire extinguishers, which had been approved for purchase by Ford, and which were already being used by General Motors. *Id.* ¶ 33. During their conversation, plaintiff alleges that Mr. Budesky repeated the false and disparaging information about PYROCAP B–136 contained in the "Review of Pyrocap B–136" document, and suggested that Pyrocap stick to the "South" where its product "would enjoy more success," presumably referring to Pyrocap's African American management and ownership. *Id.* ¶ 34.

In February of 1999, Mr. Sulzer made a sales call at Ford's Monroe, MI plant to solicit sales of PYROCAP B–136 concentrate and fire extinguishers, and met with Mr. Tony Selk, the Supervisor of Safety and Security for the plant. *Id.* ¶¶ 36–37. At the conclusion of the meeting, during which Pyrocap Marketing Manager Jean Bolden participated by telephone, Mr. Selk demonstrated an interest in purchasing plaintiff's products. *Id.* ¶¶ 38–39. Plaintiff promptly provided Mr. Selk with requested information, and subsequently contacted Mr. Budesky, leaving a message on his voice mail advising him that Ford's Monroe, MI plant had expressed an interest in purchasing PYROCAP B–136. *Id.* at ¶¶ 39–41.

On or about February 24, 1999, Mr. Budesky sent an e-mail message prohibiting any Ford employee or plant from purchasing plaintiff's products, and advising unknown persons, whose e-mail addresses are listed as "external," not to purchase PYROCAP B–136. *Id.* ¶ 42. It appears from a hard copy of the e-mail that more than 50 persons received Mr. Budesky's message. *Id.* at ¶ 43. Despite numerous efforts by Pyrocap's CEO and General Counsel, Theodore A. Adams III, to discover the identities of the parties "external" to Ford who received the e-mail message, Ford has refused to disclose the information or respond to plaintiff's concerns regarding the February 24, 1999 e-mail message. *Id.* ¶¶ 48–50.

Plaintiff commenced this action on February 22, 2002, and seeks compensatory damages of $10 million plus interest, costs, and reasonable attorney's fees, as well as punitive damages. *Id.* ¶¶ 51–54.

The Court will first address the threshold question of venue raised by defendant's motion to transfer.

## II. MOTION TO TRANSFER

Defendants move in the alternative to transfer this case to the Eastern District of Michigan, arguing that there is "absolutely no basis for the Plaintiff's choice of forum and no reason under District of Columbia law to honor its choice."

The venue statute, 28 U.S.C. § 1391, stipulates that a case presenting a federal question may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Plaintiff relies on the second section of this provision, asserting that a substantial number of relevant events took place within the District of Columbia. Pl.'s Opp'n at 8–9, 34–35, Pl's Surreply at 13–15.

Transfer of venue is governed by 28 U.S.C. 1404, which provides in relevant part:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. 1404.

The party seeking transfer of a case bears the burden of demonstrating that transfer pursuant to § 1404(a) is warranted. *Gemological Inst. of Am., Inc. v. Thi–Dai Phan*, 145 F.Supp.2d 68, 71 (D.D.C. 2001). Additionally, it must demonstrate that the action could have been brought in the proposed transferee district. *Id.*

Ordinarily, plaintiff's choice of forum is accorded substantial deference in the venue analysis, and such deference is particularly strong where plaintiff has chosen its home forum. *Id.; see also Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F.Supp.2d 66, 71 (D.D.C.1998). However, "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum." *Gemological Inst. of Am., Inc. v. Thi–Dai Phan*, 145 F.Supp.2d at 71; *see also DeLoach v. Philip Morris Co., Inc.*, 132 F.Supp.2d 22, 24 (D.D.C.2000) ("numerous cases in this Circuit recognize that such a choice receives substantially less deference where plaintiffs, as here, neither reside in, nor have any substantial connection to, that forum.").

Defendant submits that, because plaintiff is a Virginia corporation, and the majority of the allegations of the Complaint refer to events which allegedly took place in Michigan, plaintiff has failed to allege any facts creating a sufficient nexus between this action and the District of Columbia. Def.'s Mot. at 23; *see also Gemological Inst. of Am., Inc. v. Thi–Dai Phan*, 145 F.Supp.2d at 72. Conversely, defendant argues, there are substantial connections between plaintiff's claims and the Eastern District of Michigan, as that District encompasses the area in which defendant Budesky resides, Ford maintains its principal place of business, and defendants' records and witnesses are located. Def.'s Mot. at 24, n. 4. Furthermore, the acts alleged to be the cause of plaintiff's injuries, namely the preparation and distribu-

tion of the 1994 "Review of Pyrocap B-136" report, the 1998 meeting with Mr. Budesky during which Mr. Budesky is alleged to have made racially discriminatory and disparaging remarks about plaintiff's product and all other meetings between plaintiff's sales staff and defendant Ford's representatives, as well as the drafting and dissemination of the February 24, 1999 e-mail message from Mr. Budesky, are all alleged to have taken place within the Eastern District of Michigan.

Plaintiff's responses to these arguments are unpersuasive. Plaintiff now alleges, for the first time, in its opposition to defendant's motion to dismiss, that it is licensed to do business in the District of Columbia, "has substantial economic, business and employment ties within the District," and that, at all relevant times, its principal marketing and sales office is located within the District.[1] Pl.'s Opp'n at 3–4, 8–9. However, as defendant correctly points out, plaintiff has not alleged that any of the relevant business interactions with either of the defendants, beyond mere transfer of a copy of the 1994 "Review of Pyrocap B-136" Report from Mr. Hall to Mr. Humphries, took place within the Dis-

trict. Def.'s Mot. at 24–25; Pl.'s Opp'n at 9.

In support of maintaining venue in this District, plaintiff relies heavily on the presence in the District of government agencies which have tested PYROCAP B-136 and found it to be satisfactory. See Pl.'s Opp'n at 5.[2] However, as plaintiff itself points out, these agencies have issued reports documenting their research results with respect to PYROCAP B-136. See Pl.'s Opp'n at 5–6, n.1. Because the information which plaintiff contends contradicts defendants' allegations regarding PYROCAP B-136 is contained in the reports, plaintiff's reliance on the need for live testimony from agency representatives is misplaced. Furthermore, the *gravamen* of this case involves defendants' alleged knowledge and conduct, with which agencies headquartered in the District are not alleged to have any involvement whatsoever.[3] As a result, this forum "has no meaningful ties to the controversy, and no particular interest in the parties or subject matter, [and] plaintiff's choice of the District of Columbia is entitled to little deference."[4] *Gemo-*

1. The Court need not address defendant's argument that any factual allegations made for the first time in plaintiff's opposition to defendant's motion are not properly considered as, even taking those allegations into account, plaintiff's arguments in opposition to transfer still fail.

2. Specifically, plaintiff refers to "test results, test findings, reports, evaluations, correspondence and other documentation issued by U.S. government agencies including but not limited to" the U.S. Department of Transportation–Federal Aviation Administration, the U.S. Department of Agriculture—Forest Service, and the U.S. Geological Survey.

3. Plaintiff does allege that defendant Ford has been the subject of proceedings relating to racial discrimination before the Small Business Administration, the Equal Employment

Opportunity Commission and the Commission on Racial Equality, and that all of these agencies are located within the District of Columbia. Pl.'s Opp'n at 10–11. However, without more, these statements are insufficient to establish that representatives from these agencies would be able to offer evidence relevant to this matter, or that no representatives from those national agencies would available to provide relevant testimony were the action to be transferred to the Eastern District of Michigan.

4. Plaintiff has not alleged that it was harmed by any conduct on the part of federal agencies located or headquartered in the District. Accordingly, its assertion that transfer would frustrate "the D.C. federal court's strong policy interest in governing and policing U.S. government agencies" is unpersuasive. See Pl.'s Opp'n at 11.

*logical Inst. of Am., Inc. v. Thi–Dai Phan,* 145 F.Supp.2d at 73.

Moreover, under 28 U.S.C. § 1404(a), a number of factors are considered by courts contemplating a transfer of venue, including (1) the convenience of the witnesses of plaintiff and defendant; (2) ease of access to sources of proof; (3) availability of compulsory process to compel the attendance of unwilling witnesses; (4) the expense that will be incurred by willing witnesses; (5) the relative congestion of the calendars of potential transferor and transferee courts; and (6) other practical aspects of expeditiously and conveniently conducting a trial. *Gemological Inst. of Am., Inc. v. Thi–Dai Phan,* 145 F.Supp.2d at 71; *see also Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 24 F.Supp.2d at 71. Arguably, defendants' arguments inevitably lead to the conclusion that venue cannot be established in this District based on the statutory provision relied on by plaintiff. *See* 28 U.S.C. § 1391(b)(2). Nevertheless, defendants elect to focus their further submissions on the factors considered by courts contemplating a transfer of venue, submitting that, regardless of whether venue is proper in this District, consideration of each of them weighs in favor of transferring the action to the Eastern District of Michigan.

### A. Convenience of parties and witnesses

"The most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 164 (D.D.C.1995). Key witnesses, including Mr. Selk, Dr. Jensen, and Mr. Budesky, are all employed in and reside in the Eastern District of Michigan.[5] Def.'s Mot. at 24 n.4. Additionally, potential witnesses from the City of Detroit Fire Department and the Detroit Water and Sewage Department, two of the agencies whose experiences with PYROCAP B–136 are disputed by the parties, are found within that District. *See* Compl. ¶¶ 10–12, 15–16, 26, 44.

Plaintiff counters that its key witnesses, including its sales and distribution manager, Mr. Humphries, and D.C. government and federal entities which have tested plaintiff's product, are located here in the District. However, it is undisputed that Mr. Humphries' employment responsibilities include regular travel to Michigan, which is within his sales area, whereas other key witnesses may be unavailable if this case remains before this Court. *See* Pl.'s Opp'n at 9, D.'s Reply at 30–31. Plaintiff has not alleged that it would be any more inconvenient for potential third party witnesses from other fire departments or entities which have used or tested PYROCAP B–136, such as the Fire Departments of the cities of Roosevelt, NY, Atlanta, GA, Columbus, GA, and Fresno, CA Fire Departments, as well as the independent research lab Versar, Inc., to travel to Michigan to testify than to the District of Columbia. *See Gemological Inst. of Am., Inc. v. Thi–Dai Phan,* 145 F.Supp.2d at 73. Instead, it relies primarily on the potential inconvenience to wit-

---

**5.** Although defendants did not bring their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), they challenge this Court's assertion of personal jurisdiction over individual defendant Budesky under the District of Columbia long-arm statute, D.C.Code § 13–423(a)(1), and the Supreme Court's due process/personal jurisdiction jurisprudence. Def.'s Mot. at 4–9. Because the Court concludes that trans-fer to the U.S. District Court for the Eastern District of Michigan, which defendants concede could assert jurisdiction over Mr. Budesky based on his residence within that District, is appropriate it need not reach the issue of whether this Court could, consistent with relevant statutory and constitutional provisions, assert personal jurisdiction over Mr. Budesky.

nesses from agencies housed within the District of Columbia as a basis for finding venue to be proper within this District. Given that such testimony appears to be tangential to the central issues of this case, and the preference for live testimony from witnesses with personal knowledge whose credibility could be at issue, the Court finds that, as far as the convenience of witnesses is concerned, the balance of interests weighs in favor of transfer. *See Claasen v. Brown,* 15 A.D.D. 443, 1996 WL 79490, * 6 (D.D.C.1996) ("Live testimony is always markedly preferable to written depositions, particularly where the resolution of critical factual issues will likely turn on the credibility of witnesses.")

### B. *Access to sources of proof*

Defendant correctly contends that the primary sources of proof relevant to this case are located in Michigan, including documents and other evidence surrounding defendant Budesky's review and evaluation of plaintiff's product and communications among defendant's employees, as well as between plaintiff's representatives and defendant's employees. Def.'s Mot. at 27, Def.'s Reply at 32. Conversely, plaintiff itself concedes that the federal agency reports upon which it seeks to rely to bolster its assertions regarding its product's properties are "readily available on the internet" and can therefore be accessed from anywhere in the world. *See* Pl.'s Opp'n at 5. Other documents relied on by plaintiff were appended to its opposition to the motion to transfer, and therefore would be equally available within the proposed transferee district. *See* Pl.'s Opp'n, Exs. A–D. It is therefore without question that consideration of this factor favors transfer to the Eastern District of Michigan.

### C. *Availability of compulsory process*

"Courts have consistently transferred actions when the majority of witnesses live near the transferee forum, or when the witnesses may not be subject to the subpoena power of the transferor court." *See Claasen v. Brown,* 15 A.D.D. 443, 1996 WL 79490, * 6. Many of the key witnesses with crucial knowledge or information regarding the underlying facts of this case reside beyond the 100–mile limit of the subpoena power of this Court, and therefore could not be compelled to appear as witnesses within this District if unwilling to appear voluntarily. Def.'s Mot. at 26.

The District Court has broad discretion in the determination of motions to transfer venue, and "should adjudicate such motions according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Gemological Inst. of Am., Inc. v. Thi–Dai Phan,* 145 F.Supp.2d at 71 (citations omitted); *Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 50–51. Consideration of the factors relevant to venue analysis under § 1404(a), both individually and in the aggregate, counsels in favor of transferring the case to the Eastern District of Michigan. Additionally, defendants contend and plaintiff concedes that this suit could properly have been commenced in the Eastern District of Michigan. Def.'s Mot. at, Pl.'s Opp'n at 36. Though plaintiff's claim that requiring it to prosecute this action in the Eastern District of Michigan "would substantially drain the financial resources of a small minority-managed company" is compelling, the Court is persuaded that, even if venue were proper in this District, the case should nevertheless be transferred to the Eastern District of Michigan. *See* Pl.'s Opp'n at 11, 33, 37–38; *Gemological Inst. of Am., Inc. v. Thi–Dai Phan,* 145 F.Supp.2d at 74 ("A court may properly consider in assessing the interest of justice 'the relative ability of the parties to bear the expenses of litigating in a distant forum.'") (citations omitted). Each of the

considerations provided for in the venue statute, 28 U.S.C. § 1406(a), favors transfer to the Eastern District of Michigan in the instant case.

## IV. CONCLUSION

Upon careful consideration of defendant's motion to dismiss or, in the alternative, to transfer, the submissions in response thereto and in support thereof, and the governing statutory and case law, for the foregoing reasons, defendant's motion to transfer this entire matter to the United States District Court for the Eastern District of Michigan [8–2] is hereby **GRANTED.** Having thus disposed of the jurisdictional questions raised by defendant, this Court need not address defendant's motion to dismiss [8–1]. Defendant's motion for an oral hearing on its motion [14–1] is hereby **DENIED AS MOOT.**