**Barry McCLAMROCK, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

No. CIV.A. 02–2383(RBW).

United States District Court, District of Columbia.

June 4, 2003.

---

## MEMORANDUM OPINION

WALTON, District Judge.

Currently before the Court is defendant Eli Lilly and Company's ("Lilly") motion to transfer, which asserts that plaintiff's claims should be transferred to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a) (2000). For the reasons set forth below, the Court will grant the defendant's motion and transfer this action to the Middle District of North Carolina.

### I. *Background*

This product liability action, which was brought in this Court pursuant to the Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332 (2000), was filed by plaintiff Barry McClamrock, a citizen of North Carolina, against defendant Lilly, an Indiana corporation. Plaintiff alleges that he has suffered severe injuries as a result of his ingestion of Zyprexa, a pharmaceutical drug manufactured by Lilly, which was prescribed for plaintiff's use by his treating physician in North Carolina.

Defendant has filed a motion to transfer this action to the Middle District of North Carolina. Defendant argues that all of the witnesses reside and documentary evidence pertinent to plaintiff's claims is located in North Carolina, or alternatively Indiana, where defendant maintains its principal place of business. Defendant Eli Lilly and Company's Memorandum of Points and Authorities in Support of Its Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the Middle District of North Carolina ("Def.'s Mem.") at 1–2. Plaintiff argues, in opposition, that his choice of forum should be accorded deference and that there are federal documents and wit-

nesses located in the District of Columbia that warrant this action to remain in this district. Plaintiff's Opposition to Defendant Eli Lilly and Company's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the Middle District of North Carolina ("Pl.'s Opp'n") at 7. Furthermore, plaintiff argues that his counsel resides in this district and therefore, if this action were transferred to North Carolina, he would be left without legal representation. *Id.* at 6.

### II. *Discussion*

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the moving party, defendant bears the burden of establishing that the transfer of this action to another federal district is proper. *Shenandoah Associates Ltd. Partnership v. Tirana,* 182 F.Supp.2d 14, 25 (D.D.C. 2001). Although the plaintiff's choice of forum is given substantial deference, this deference is "greatly diminished when the activities have little, if any, connection with the chosen forum." *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 323 (D.D.C. 1991) (citation omitted); *Greater Yellowstone Coalition v. Bosworth,* 180 F.Supp.2d 124, 128 (D.D.C.2001) (citation omitted).

The first question the Court must decide in assessing whether this case should be transferred is whether this action could have been brought in North Carolina. Pursuant to 28 U.S.C. § 1391(a) (2000), venue is proper in a "judicial district where any defendant resides ... [or] *in which a substantial part of the events or omissions giving rise to the claim occurred* ... [or] a judicial district in which any defendant is subject to personal jurisdiction at the time the action is com-

menced, if there is no district in which the action may otherwise be brought." (emphasis added). Because most, if not all, of the "events or omissions giving rise to the claim occurred" in North Carolina, this action could have properly been brought in that jurisdiction.

 Second, the Court must determine whether the private interests of the parties favors transfer of this action to North Carolina. Although convenience of the parties, convenience of the witnesses, and the interests of justice are the three principle factors to consider in determining whether to transfer a case, courts have also considered "various other factors, including the private interests of the parties and the public interests of the court," as additional considerations "protected by the language of Section 1404(a)." *Trout Unlimited v. United States Dep't of Agriculture*, 944 F.Supp. 13, 16 (D.D.C.1996) (citations omitted). The private considerations that may be considered include:

(1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Id.* (citations and footnotes omitted).

 As to the first factor of the these private interests factors, plaintiff appears to blindly assume that because he chose the District of Columbia to file this action, "[h]is choice of venue should not be disturbed." Pl.'s Opp'n at 4. However, as stated previously, plaintiff's choice of forum is not accorded substantial deference where "the plaintiff's[ ] choice of forum has 'no meaningful ties to the controversy and

no particular interest in the parties or the subject matter.' . . . Moreover, the defendant's[ ] burden in a motion to transfer decreases when the plaintiff's[ ] choice of forum has no meaningful nexus to the controversy and the parties." *Greater Yellowstone Coalition*, 180 F.Supp.2d at 128 (citations omitted).

Regarding the second private interest factor, the defendant's choice of forum, North Carolina, would appear to be the more appropriate forum for the litigation of this action, as most of the remaining private factors all favor the transfer of this matter to that jurisdiction. It is the location where plaintiff's claims arose (the third factor), where plaintiff resides and where the defendant desires to have this matter transferred (the fourth factor), and in conjunction with Indiana, is presumably where some of the evidence is located (the sixth factor). There being no contention that the witnesses will not be available in this district, the fifth factor is really of no significance. Thus, aside from plaintiff's choice of this forum, and the convenience of the witnesses, the remaining private interest factors the Court may consider favor the transfer of this action to North Carolina.

 However, in an attempt to convince the Court that this action should remain in this district, plaintiff makes several arguments pertaining to the private interest factors, which he argues supports maintaining this action in this district. For example, plaintiff argues that he may want to depose and call as witnesses individuals who are located in the District of Columbia, such as employees of the Federal Drug Administration ("FDA"). While it may be more convenient for witnesses who work in this district to have their depositions taken and their testimony presented here, an important factor in determining

whether to transfer an action is also the "availability of compulsory process to compel the attendance of [witnesses] ..." *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 164 (D.D.C.1995). While potential witnesses who work in this district will be outside the compulsory reach of a North Carolina district court, plaintiff does not allege that the non-party witnesses who work in this district will refuse to appear for depositions and at the trial if this matter is transferred to North Carolina, or that their testimony can not be secured by other means. *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.,* 24 F.Supp.2d 66, 72–73 (D.D.C.1998) (denying defendant's motion to transfer where there was no allegation that non-party witnesses would refuse to appear at trial or that the "third-parties' testimony could not be obtained by other means, such as written or videotaped depositions.") (citation omitted). More importantly however, as defendant notes, the nucleus of plaintiff's claims is not that the FDA acted improperly in approving Zyprexa for human consumption; the FDA has not been named as a defendant and plaintiff does not allege in the complaint that the FDA was somehow negligent or at fault for its approval of the drug. Rather, the *gravamen* of plaintiff's lawsuit is that Lilly was negligent in placing the drug on the market, and failed to disclose to plaintiff and his treating physician the adverse consequences that could result from the use of Zyprexa. Thus, plaintiff has not demonstrated how FDA officials will be vital, or even important, to the proof of his strict liability/failure to warn, negligence, breach of express and implied warranties, and fraud claims against Lilly. *See Pyrocap Int'l Corp. v. Ford Motor Co.,* No. Civ.A. 02–346, 259 F.Supp.2d 92, 96–97 (D.D.C.two003) (granting defendant's motion to transfer action from District of Columbia to the Eastern District of Michigan, despite plaintiff's argument that the government agencies who tested the product at issue resided in the District of Columbia, because "the *gravamen* of th[e] case involve[d] defendants' alleged knowledge and conduct, with which agencies headquartered in the District [were] not alleged to have any involvement whatsoever."). *Cf. Chung,* 903 F.Supp. at 164 (transferring action from District of Columbia to the Western District of New York where the "two most important witnesses" resided in that jurisdiction).

Interestingly, although plaintiff indicates that he will need the testimony of FDA employees, he nonetheless posits that

> there are no treating physicians that would be 'necessary' for trial in this case.... Warren Williams, M.D., was [p]laintiff's Zyprexa prescribing physician, but Lilly has failed to provide any reasons why Dr. William's testimony is imperative for trial. Further, any treating physicians' testimony that may be needed for trial could be videotaped.

Pl.'s Opp'n at 8. A very similar position was rejected by the court in *McGinnis v. Eli Lilly & Co.,* 181 F.Supp.2d 684 (S.D.Tex.2002). In *McGinnis,* the plaintiff brought claims against the defendant for strict products liability, negligence, and breach of implied warranty based upon plaintiff's wife's ingestion of a pharmaceutical drug manufactured by the defendant (Prozac), which plaintiff alleged caused his wife's suicide. *Id.* at 686. At the time of the suicide, plaintiff and his wife resided in North Carolina; in addition, plaintiff's wife had received mental health counseling and had been prescribed Prozac by doctors in North Carolina. *Id.* In granting the defendant's motion to transfer the action to North Carolina from Texas, the state where the plaintiff resided, the *McGinnis* court rejected the plaintiff's argument that

the treating physicians would not be necessary for trial of the case.

Plaintiff further asserts that the other witnesses identified by Lilly, including the mental health professionals who treated decedent, are incidental to the adjudication of this case, and that testimony presented by deposition, in lieu of testimony at trial, would suffice for all of these witnesses. The Court disagrees. Although Dr. Kilbride and Thomas Hensley may have met with decedent for only brief periods of time, they still represent the only mental health professionals to have treated and diagnosed decedent's depression. Not only is Doctor Kilbride the only known physician to have prescribed Prozac to decedent, the very drug that [p]laintiff now claims caused his wife's death, but he is the only individual who can testify as to whether or not Lilly failed to warn and/or made material misrepresentations to him regarding Prozac's safety, as specially averred by [p]laintiff. In light of these compelling facts, it is bordering on the absurd for [p]laintiff to suggest that the testimony of either Dr. Kilbride or Thomas Hensley is somehow inconsequential to the resolution of this case.

*Id.* at 688.

Similarly, in this case plaintiff is being at best disingenuous to even suggest that he will need the testimony of FDA employees but will not need the testimony of his North Carolina prescribing and treating physicians in a case in which he is seeking to recover damages for "past and future medical, hospital, incidental and service expenses ...[,]" Compl. at 22. How plaintiff realistically believes he will be able to prove these elements of damages without the testimony of the health care professionals who have treated him and who will presumably continue to do so in the future,

if future treatment will in fact be required, is beyond this Court's comprehension. *See, e.g., Hensley v. Danek Medical, Inc.,* 32 F.Supp.2d 345, 350 (W.D.N.C.1998) ("In North Carolina, a jury award cannot be sustained in the absence of expert medical testimony on the issue of causation....") (citation omitted); *District of Columbia v. Howell,* 607 A.2d 501, 506-7 (D.C.1992) (setting aside plaintiff's "damage award for future medical expenses ... because the award [was] unsupported by evidence[]" and noting that plaintiff's medical experts failed to offer any testimony regarding plaintiffs future therapy costs). Moreover, the complaint alleges that the physician who prescribed Zyprexa for plaintiff's use "relied on the representations made to him by the [defendant] ... and would not have recommended for use or prescribed Zyprexa if he had known the true facts regarding the safety of Zyprexa." Compl. ¶ 17. Certainly the plaintiff must and the defendant will undoubtedly desire to question plaintiff's prescribing physician concerning these alleged misrepresentations as he is the only person who can state what misrepresentations he specifically relied on in prescribing Zyprexa to plaintiff. *See Pyrocap Int'l Corp.,* 259 F.Supp.2d at 97-98 (rejecting plaintiff's opposition to transfer motion that was based on argument that key government official witnesses were present in the District of Columbia. The court held, "[g]iven that [the] testimony [of the governmental officials] appears to be tangential to the central issues of this case, and the preference for live testimony from witnesses with personal knowledge whose credibility could be at issue, the Court finds that, as far as the convenience of witnesses is concerned, the balance of interests weighs in favor of transfer.") (citation omitted).

In what appears to be a desperate attempt to maintain this action here, plain-

tiff's counsel states that he "will agree to provide witnesses, the [p]laintiff, the family and the prescribing and treating physicians for deposition where and when the [d]efendant requests.... There are absolutely no witnesses that would be unavailable at a trial in the District of Columbia." Pl.'s Opp'n at 8. While the Court has no reason to reject the accuracy of counsel's representations, surely plaintiff, the physician who prescribed Zyprexa to plaintiff and plaintiff's treating physicians, and maybe more importantly their other North Carolina patients, will be far less inconvenienced by having their testimony taken in North Carolina rather than having to endure the inconvenience of traveling to the District of Columbia, which is "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) ..." *Pyrocap Int'l Corp.*, 259 F.Supp.2d at 96–97 (quoting *Chung,* 903 F.Supp. at 164); *see also McGinnis,* 181 F.Supp.2d at 689 ("those witnesses who are willing to testify at trial without subpoena would be grossly inconvenienced by having to travel 800 miles to the Galveston Division courthouse, rather than approximately 50 miles to the nearest federal courthouse in the Western District of North Carolina."). In addition, despite plaintiff's representations, counsel cannot guarantee that all of the witnesses located in North Carolina will be willing, when the time comes, to travel to this district. In the event that occurs, this Court is without the authority to compel their attendance for trial. *See* Fed.R.Civ.P. 45(b)(2). And, while the same will be the case for a North Carolina court, unlike the potential witnesses located in this district who may not even possess relevant testimony, many of the *essential* witnesses are located in North Carolina where their presence can be compelled if they refuse to voluntarily present their testimony. *Pyrocap Int'l Corp.,* 259 F.Supp.2d at 97–98 (" 'Courts have consistently transferred actions when the majority of witnesses live near the transferee forum, or when the witnesses may not be subject to the subpoena power of the transferor court.' ... Many of the key witnesses with crucial knowledge or information regarding the underlying facts of this case reside beyond the 100–mile limit of the subpoena power of this Court, and therefore could not be compelled to appear as witnesses within this District if unwilling to appear voluntarily.") (citation omitted).

Plaintiff also makes the argument that if this action is transferred "[a] potential result could be that [p]laintiff would be unable to retain counsel in North Carolina, leaving [p]laintiff without legal representation." Pl.'s Opp'n at 6. In response to this argument, defendant notes that plaintiff's lead counsel resides in California and that his District of Columbia counsel was retained "solely as local counsel to facilitate the filing in the District of Columbia." Defendant Eli Lilly and Company's Reply Brief in Further Support of its Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the Middle District of North Carolina ("Def.'s Reply") at 2. Any inconvenience to plaintiff's counsel caused by the transfer of this action is not a factor that carries considerable weight in the Court's determination of whether or not to grant a motion to transfer pursuant to section 1404(a). *See Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 52 n. 7 (D.D.C. 2000) ("The location of counsel 'carries little, if any, weight in an analysis under § 1404(a).' ") (citing *Vencor Nursing Centers, L.P. v. Shalala,* 63 F.Supp.2d 1, 6 n. 4 (D.D.C.1999)); *Armco Steel Co.,* 790 F.Supp. at 324 ("The key to Armco's argument against transfer is that counsel and counsel's document depositories are located in the District of Columbia. The location of counsel carries little, if any, weight in an analysis under § 1404(a).") (citing

*Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142, 143–44 (D.D.C.1979)). Plaintiff's counsel knew that his client resided and was injured in North Carolina; therefore, he should have anticipated that this action could possibly be removed to a district in North Carolina since that is where all of the operative facts occurred and where many of the key witnesses are located. In addition, plaintiff's counsel has not represented he will have to withdraw from this matter if it is transferred; nor has plaintiff stated why he would be unable to retain local counsel in North Carolina.

■■■■■ There are also public interest factors the Court can consider in deciding whether a case should be transferred.[1] These public interest factors are: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Trout,* 944 F.Supp. at 16 (footnotes and citations omitted). Consideration of these factors also support the transfer of this action to North Carolina.

■■■■ First, as to the law that will govern this litigation, North Carolina law will most likely control. To determine what law this Court would have to apply, if this case remains in this district, the Court would have to use the District of Columbia's choice of law analysis. *Ideal Elec-*

tronic Security Co. v. International Fidelity Ins. Co.,* 129 F.3d 143, 148 (D.C.Cir. 1997). In a tort action such as the one before this Court, District of Columbia choice of law principles dictate that the Court look to the factors contained in the Restatement (Second) of Conflict of Laws § 145 (1971). These factors include the place of the injury; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of business and place of incorporation of the parties, and the place where the relationship is centered. *Id.* at 19 (citations omitted). Application of these factors would require the Court to apply the substantive law of North Carolina and this result favors this action being transferred to North Carolina because the courts in that jurisdiction have the greatest familiarity with North Carolina law. *See Trout,* 944 F.Supp. at 19 (transferring action to district court in Colorado even though case involved federal statutes and regulations because it might also "in part, involve the interpretation of Colorado law."). *Cf. Greater Yellowstone Coalition,* 180 F.Supp.2d at 128–29 (denying defendant's motion to transfer where plaintiff's complaint required interpretation of federal statues and federal government officials located in the District of Columbia had been involved in the decision about which plaintiffs sought judicial review).

Regarding where the local interest in deciding this controversy lies,[2] this district has, at best, minimal interest in this mat-

---

1. It is not necessary for the Court to address the public interests factors because it has concluded that the private interests weigh in favor of transfer. *Ingram v. Eli Lilly & Co.,* 251 F.Supp.2d 1, 3 (D.D.C.2003) (citing *Shields v. Eli Lilly & Co.,* No. Civ.A. 87–2166, 1987 WL 26426, at *2 (D.D.C. Nov.23, 1987)). However, the Court will address the public interest factors as they further support the transfer of this action to North Carolina.

2. Neither party addressed the congestion of the respective courts and therefore the Court will not address whether this factor would further support the transfer of this action to North Carolina. However, a recent report issued by the Administrative Office of the United States Courts suggests that congestion in this Court is considerably greater than congestion in the Middle District of North Carolina. Civil Justice Reform Act Report, Administrative Office of the United States Courts (September 30, 2002).

ter, while North Carolina's interests are considerable since the injury at issue occurred in that state to one of its residents, the doctors that prescribed the drug and have treated and continue to treat plaintiff reside there, and the drug that allegedly caused the injury was marketed, sold, and prescribed there. Finally, there is no allegation that transfer will result in unnecessary delay in resolving this matter. Although this factor is not controlling, it does provide further support for the transfer of this action.[3]

As a final matter, this Court rejects plaintiff's position that this action should be transferred to the Southern District of Indiana, the defendant's place of incorporation, if a transfer is deemed appropriate. Defendant responds to this point by stating that although it "has no objection to the transfer of this suit to its home forum, North Carolina is the jurisdiction with the most pertinent contacts to this litigation and transfer there will most appropriately serve both the convenience of the parties and witnesses as well as the interests of justice as warranted by 28 U.S.C. § 1404(a)." Def.'s Reply at 8 n. 9. The Court agrees. As noted already, plaintiff

is a North Carolina citizen; his treating and prescribing physicians are North Carolina physicians; his alleged injuries and treatment occurred in North Carolina. Accordingly, as concluded above, North Carolina clearly has the greatest interest in the resolution of this controversy. *See, e.g., McGinnis*, 181 F.Supp.2d at 690 (rejecting plaintiff's argument that the wrong that formed the basis of his strict products liability claims against the defendant "primarily took place at Lilly's headquarters in Indianapolis, Indiana, where the initial decision was made to mislead or not to warn physicians and consumers about the dangers of Prozac ... In its [c]omplaint, [p]laintiff avers that Millie McGinnis' death was proximately caused by Lilly's affirmative misrepresentations and/or failure to warn consumers, via their prescribing physicians ... In this case, then, the alleged wrong most likely occurred in North Carolina, since Lilly failed to warn and/or communicated false information to the prescribing physician ... and the consumer ... in North Carolina."). In sum, because the Court concludes that all of the operative facts concerning this action occurred in North Carolina, and the private and

---

**3.** This Court reached a different conclusion regarding a transfer request in *Ingram v. Eli Lilly & Co.*, 251 F.Supp.2d 1, 6 (D.D.C.2003), and both parties reference *Ingram* in their papers. However, the facts here are distinguishable from the facts in *Ingram*. In *Ingram*, the plaintiff sued defendant Lilly for injuries she allegedly suffered as a result of her mother's ingestion of the pharmaceutical drug diethylstilbestrol ("DES") during her mother's pregnancy with the plaintiff. *Id.* at 1. At the time Ingram's mother ingested DES, she was a resident of the State of Washington. *Id.* In denying the defendant's motion to transfer the action to the State of Washington, this Court noted:

> neither Washington nor the District of Columbia have a particularly strong interest in this case as a local controversy because neither plaintiff nor her mother are currently residents of Washington or the District of

Columbia and none of the defendants are incorporated in either jurisdiction. In addition, there is nothing uniquely local about DES litigation as the product was marketed and dispensed throughout the nation.

*Id.* at 5–6. Furthermore, in *Ingram*, it appeared that the witnesses vital to the action did not reside in the State of Washington and thus they "would [not] be any more inconvenienced by having to travel to the District of Columbia, as compared to the State of Washington." *Id.* at 4–5. Unlike *Ingram*, plaintiff and his prescribing and treating physicians still reside in North Carolina, which is also the location where the drug was prescribed and purchased. This Court also noted in *Ingram* that one of its members, Magistrate Judge Kay, had "extensive experience mediating DES claims" and this factor further convinced the Court that transfer was not warranted.

public interests favor this action's transfer to that jurisdiction, the Court will grant the defendant's motion and this action shall be transferred to the Middle District of North Carolina.

**SO ORDERED** on this 4th day of June, 2003.[4]

### *ORDER*

In accordance with the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that defendant's Motion to Transfer this action to the Middle District of North Carolina [# 14] is granted. It is further

**ORDERED** that pursuant to 28 U.S.C. § 1404(a) the Clerk of this Court shall transfer all papers in this proceeding, together with a certified copy of this Memorandum Opinion and Order, to the United States District Court for the Middle District of North Carolina. It is further

**ORDERED** that the status conference in this matter scheduled for June 4, 2003, at 9:15 a.m. is vacated.

4. An appropriate Order accompanies this Memorandum Opinion.